IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2007 JAN 30  A 10: 22

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| JAN BYRNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:06-CV-1084 |
| ) | WKW |
| ALABAMA ALCOHOLIC BEVERAGE ) | |
| CONTROL BOARD, and ) | |
| EMORY FOLMAR, in His Individual ) | |
| and Official Capacities, ) | |
| ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT FOLMAR'S REPLY MEMORANDUM IN SUPPORT OF
HIS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON
WHICH RELIEF CAN BE GRANTED OR, IN THE ALTERNATIVE,
FOR A MORE DEFINITE STATEMENT**

On December 29, 2006, Defendant Emory Folmar submitted a motion to dismiss this action against him, with a supporting memorandum of law. In part, the motion was based on the ground that Folmar is entitled to immunity from liability for damages under 42 U.S.C. § 1983. Plaintiff, through her attorney of record, submitted her response to the motion to dismiss. Defendant Folmar, hereinafter referred to as "Folmar", submits this reply to Plaintiff Byrne's, hereinafter referred to as "Byrne", response.

1

## I. ABSOLUTE LEGISLATIVE IMMUNITY

While Defendant Folmar, as Administrator of the Defendant Board, does not occupy a legislative office nor hold a legislative title, it is still possible under federal law for him to engage in a legislative function and thereby to be entitled to the absolute immunity that is accorded legislative action. Officials outside the legislative branch are entitled to legislative immunity from suit when they perform legislative functions. *Bogan v. Scott-Harris,* 523 U.S. 44, 118 S. Ct. 966 (1998) (mayor's introduction of a budget and signing into law an ordinance were formally legislative, and immunized as such, even though he was an executive official).

Folmar submits that the acts of which Byrne complains, that is, the organizational changes Folmar made and, in particular, his decision to place the Responsible Vendor Program in the Enforcement Division, were legislative acts for which he has absolute immunity. Such immunity is indicated by *Bogan* itself, as well as by Eleventh Circuit precedent. In *Bogan*, an ordinance eliminating a city department, of which the civil rights complainant was the sole employee, was legislative in substance, precluding any need to consider whether the formally legislative character of the allegedly legislative action by local officials would be sufficient to confer absolute immunity from a § 1983 suit on city officials; the ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provided to its constituents. 523

U.S. at 55-56. There could hardly be a more accurate description of the legislative nature of the actions of Folmar that are at the heart of this case.

As for the Eleventh Circuit, in *Macuba v. Deboer*, 193 F.3d 1316 (11th Cir. 1999), county commissioners' actions, in voting to reorganize land-use departments and approving a unified structure for the county development department, were "quintessentially legislative" functions, and thus the commissioners were entitled to absolute immunity from a § 1983 suit brought by a county license investigator whose position was eliminated during the reorganization. The plaintiff in *Macuba* had alleged that the county and its commissioners abolished his position and denied him employment in another position because of his whistle-blowing activities and his contact with the press, in violation of his right to free speech.

As in *Bogan* and *Macuba*, Byrne's challenges to Folmar's actions which affected her employment certainly concern organizational and budgetary decisions that are "quintessentially legislative." Accordingly, Folmar, who made those decisions, is entitled to absolute legislative immunity.

## II.  QUALIFIED IMMUNITY

Assuming only for argument's sake that Defendant Folmar does not have absolute legislative immunity, he nonetheless enjoys qualified immunity from liability under § 1983.

When state officials are sued in their individual capacities, application of qualified immunity to their actions is the rule rather than the exception, and only in exceptional cases will government actors have no shield against claims made against them in their individual capacities; unless a government agent's act is so obviously wrong, in light of preexisting law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. *Braddy v. Florida Dep't of Labor & Employment Security*, 133 F.3d 797 (11th Cir. 1998).

In her response to the motion to dismiss, Byrne does not contest the premise for qualified immunity, that is, that Folmar was engaged in discretionary functions in taking the actions of which she complains. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004) (instead of focusing on whether the challenged acts of a government employee seeking qualified immunity involved the exercise of actual discretion, a court assesses whether they were of a type that fell within the employee's job responsibilities, and the inquiry is two-fold; the court asks whether the government employee was (a) performing a legitimate job-related function, i.e., pursuing a job-related goal, (b) through means that were within his power to utilize). Instead, Byrne in this case asserts that qualified immunity is not available to Folmar because the federal constitutional rights which Folmar allegedly violated were clearly established at the relevant times, within the meaning of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982). There is no

question that, in the abstract, the rights of public employees to due process and equal protection, generally, were clearly established in 2006, but that is not the proper standard for qualified immunity.

As Byrne noted in passing in her response to Folmar's motion, to avoid the protection of qualified immunity on the basis that the right which an official allegedly violated is "clearly established," *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034 (1987), instructs that the contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right; in other words, the standard is a particularized one, making it necessary to consider the particulars of each case, not merely whether there is a general right to due process or equal protection. *See Braddy*, 133 F.3d at 801 (to prove that a state official was not qualifiedly immune from a § 1983 claim alleging race and sex discrimination, the employee was required to show that when the official acted as she did, the law was developed in such a concrete and factually defined context as to make it obvious to all reasonable government actors, in the official's place, that what she was doing violated federal law).

For each of the particular claims asserted against Folmar under § 1983, there is a clear basis for finding that a reasonable official in Folmar's position would not reasonably have believed that his actions were violating Byrne's federal constitutional rights.

## A.   Due Process—Property Interest

Regarding the allegation that Folmar deprived the Plaintiff of a property interest in her job without affording her due process (Complaint, ¶ 41), no official in Folmar's position would have reasonably believed that Folmar's actions were such as to deprive the Plaintiff of whatever property interest she may have had in her position. In *Harris v. Board of Educ. of City of Atlanta*, 105 F.3d 591 (11th Cir. 1997), the court held that members of a city's board of education could not have reasonably believed that they were acting illegally in relieving a school superintendent of his responsibilities while continuing to pay him the economic benefits of his position, and thus the members as individuals were qualifiedly immune from the superintendent's suit claiming deprivation of a property right without due process; when the board acted, courts agreed that a public official had a constitutionally protected property interest only in the economic benefits of his position and did not have any right to actually hold the position and execute its duties.

The Eleventh Circuit has not departed from this principle since it decided *Harris*. In fact, *Harris* has been cited by another federal circuit court as support for a similar ruling as recently as the summer of 2006. *See Batagiannis v. West Lafayette Community School Corp.*, 454 F.3d 738, 741 (7th Cir.2006) ("Every appellate decision that has addressed the subject accordingly has held that a contractual right to be a superintendent of schools creates a property interest in the salary of that office but not the ability to make decisions on behalf of the public.").

In this case Byrne has admitted that at all material times, and to the present, she has held the same job title. (Complaint, ¶ 24.) She has not alleged, nor could she on the facts of this case, that she has suffered any loss of pay or benefits as a result of the alleged actions of Folmar. Rather, she has objected to the effects on the day-to-day aspects of her job, such as who supervises whom, which have resulted from the organizational changes made by Folmar. Byrne has no constitutionally protected property interest in such matters. At the very least, it certainly was not clearly established that she had such a constitutional right, thereby making Folmar immune from this claim.

### B.   Due Process—Liberty Interest

Byrne has alleged that, by his statements and actions, Folmar "stigmatized" her and injured her reputation in connection with her job. (Complaint, ¶¶ 28, 42.) Presumably this is an attempt to assert a claim that Folmar deprived the Plaintiff of a liberty interest without due process of law. This claim is fatally deficient in a number of respects, including the absence of any allegation that Folmar made truly stigmatizing statements that were false, that such statements were publicly disseminated, or that the Plaintiff has been injured in her ability to secure future employment. (Indeed, Byrne remains in her job, so she has not experienced difficulty in obtaining employment.) *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S. Ct. 2701 (1972) (where state, in declining to rehire assistant professor at state university, did not make any charge against him that might seriously damage his standing and associations in his community, and

there was no suggestion that state imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities, he was not deprived of "liberty" protected by the Fourteenth Amendment when he simply was not rehired in the job, but remained as free as before to seek another); *Price v. University of Alabama*, 318 F. Supp. 2d 1084 (N.D. Ala. 2003) (state university president did not violate any liberty interest of football coach in course of firing him, precluding claim of wrongful termination in violation of coach's due process rights; no statements of sufficiently stigmatizing nature were made in connection with firing).

However, it is sufficient support for Folmar's immunity defense to this claim that it is not at all clearly established that a public employee can assert a liberty-interest claim when she has not lost her position at all, but merely complains that aspects of her job have changed. *See Barnette v. Folmar*, 64 F.3d 598 (11th Cir. 1995) (an action brought against Folmar, among others, when he was mayor of the City of Montgomery) (plaintiff former police officers failed to show that mayor and police officials were not entitled to qualified immunity on claim of constructive discharge, since allowing officers to resign rather than bring them up on formal charges after "sting operation" could have reasonably seemed to be no discharge at all in light of then-existing law; chief of police, who made stigmatizing public remark regarding officers who resigned rather than face formal charges after sting operation—that former officers were "dirty cops"— was entitled to qualified immunity on claim by former officers that they were deprived of liberty interest without due process,

since officers had already resigned before chief made stigmatizing remark, and it was not clearly established that officers' resignations were "discharges"); *Howe v. Baker*, 796 F.2d 1355 (11th Cir. 1986) (neither state's attorney nor investigator in his office could be held liable in damages, in § 1983 suit, for alleged deprivation of liberty interest in placing in state trooper's public record a letter stating that because of prior problems with trooper's credibility, prosecutor felt he could not conscientiously file trooper's cases; under then-existing law it was not certain what invaded interest would constitute the "plus" of the stigma-plus test for determining whether the public statements deprived the object of those statements of a due process liberty interest).

In this case Folmar denies that he said anything stigmatizing about Byrne. In any event, however, it is clear as a matter of law that Byrne cannot meet the "plus" component of the "stigma-plus" test. That is, she cannot show that she has been injured in her ability to secure other employment because she retains her current position (with no loss of pay or benefits) during all times relevant to this action.

### C. Equal Protection—Retaliation

Byrne has alleged that Folmar violated her right to equal protection by retaliating against her for having opposed unlawful employment actions. (Complaint, ¶¶ 42, 47, 49.) As recently as June 2006, the Eleventh Circuit has stated that no clearly established right exists under the Equal Protection Clause to be free from retaliation; thus, in that case, a city manager and a fire chief were entitled to qualified immunity on § 1983 claims by fire

9

department employees that they were retaliated against in violation of their right to equal protection. *Gardner v. City of Camilla, Ga.*, 2006 WL 1687650 (11th Cir. 2006). (*Gardner*, as an unpublished decision, is not binding precedent, but it still stands as persuasive authority. 11th Cir. R. 36-2.)

The court in *Gardner* cited and relied upon *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338 (11th Cir. 1995) (county police officials were entitled to qualified immunity from claim of county employee that they violated equal protection by retaliating against her for her complaints of sex discrimination, as there is no clearly established right under the Equal Protection Clause to be free from retaliation). In accord with *Gardner* and *Ratliff* is *Eldridge v. Morrison*, 970 F. Supp. 928 (M.D. Ala. 1996) (no established right exists under Equal Protection Clause to be free from retaliation, and correctional facility officials were thus qualifiedly immune from § 1983 action alleging deprivation of such right).

Since there is no clearly established right under the Equal Protection Clause to be protected from retaliation in public employment, Folmar is also immune from liability for such a claim.

### D.  Equal Protection-Gender And Age

Byrne's allegations of a violation of equal protection based on her gender and age (Complaint, ¶¶ 45, 47-49) are similarly insufficient to overcome Folmar's qualified immunity defense.

10

First, in the same respect in which her other § 1983 claims are deficient, the absence of any change in Byrne's title, compensation, or benefits is fatal to such claims and makes Folmar immune from them. *See Portera v. Ala. Dep't of Finance*, 322 F. Supp. 2d 1285 (M.D. Ala. 2004) (supervisor of a white, state finance department security systems analyst was entitled to qualified immunity from suit by an analyst claiming that her equal protection rights were violated when she was essentially stripped of all duties and left to sit in her office with nothing to do, while her pay and benefits were continued; it was not clear at time that action in question violated Equal Protection Clause), *aff'd without published opinion*, 133 Fed. Appx. 739 (11th Cir. 2005). In any event, Byrne in the instant case was not made to sit in an office with nothing at all to do, so that her claim is substantially weaker than was the claim in *Portera*.

The Eleventh Circuit has addressed this issue, as follows:

> Work assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities. The same concern exists for public entities such as the Town's Police Department, which must balance limited personnel resources with the wide variety of critically important and challenging tasks expected of them by the public.
>
> For these reasons, applying the adverse action requirement carefully is especially important when the plaintiff's claim is predicated on his disagreement with his employer's reassignment of job tasks. Courts elsewhere have been reluctant to hold that changes in job duties amount to adverse employment action when unaccompanied by any tangible harm.
>
> . . . .

11

> In the vast majority of instances . . . we think an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause—especially where, as here, the work assignment at issue is only by definition temporary and does not affect the employee's permanent job title or classification.

*Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1244-45 (11th Cir. 2001) (citations omitted); *see also Akins v. Fulton County, Ga.*, 420 F.3d 1293 (11th Cir. 2005) (official in county's purchasing department did not have fair warning that conduct which resulted in "constructive transfer" of one of his employees to another department, with same pay, vacation, and sick leave, might constitute "adverse employment action," and was entitled to qualified immunity from liability under § 1983 for actions resulting in employee's transfer; transfer of public employee to another position, with same pay, vacation, and sick leave, and following which she was even reclassified to higher pay rate, did not qualify as "adverse employment action"). While *Davis* concerned a claim of employment discrimination under Title VII, not § 1983, the analysis under the two statutes is the same, as is shown by the ruling in *Akins*. This is further indicated by the fact that *Davis* was cited and relied upon by the court in *Portera,* although the court there was dealing with a discrimination claim under § 1983.

A second, independent basis for finding Folmar immune from liability for the alleged claims of gender and age discrimination under § 1983 is the absence of any allegations of specific facts to indicate that Folmar acted with a discriminatory intent based on the Plaintiff's gender or age. *See Mencer v. Hammonds*, 134 F.3d 1066 (11th

12

Cir. 1998) (superintendent was entitled to qualified immunity in former teacher's action alleging that failure to promote teacher to principal violated Equal Protection Clause, as statements cited by teacher, which were ambiguous and were not related to teacher's particular case, would not support finding of discriminatory intent, as required to show equal protection violation); *Robertson v. Alabama Dep't of Economic & Community Affairs*, 902 F. Supp. 1473 (M.D. Ala. 1995) (state officials enjoyed qualified immunity from worker's claim that her transfer and alleged mistreatment constituted sex discrimination in violation of Fourteenth Amendment; state employee failed to state prima facie case of sexual discrimination in violation of Equal Protection Clause of Fourteenth Amendment, since worker's treatment was not based on her status as female).

## CONCLUSION

The Court should dismiss this action against Defendant Emory Folmar due to the failure to state a claim upon which relief can be granted, as Folmar is entitled to absolute legislative immunity from liability under 42 U.S.C. § 1983 or, in the alternative, to qualified immunity.

Respectfully submitted this the 29th day of January, 2007.

/s/ Joseph W. Adams
Joseph W. Adams (ASB 3743 A34J)
Attorney for Defendants
Post Office Box 1487
Ozark, AL  36361
Telephone:  (334) 774-5533
Facsimile:  (334) 774-1252
Mail: Joeadamslaw@aol.com

13

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on Jay Lewis, Attorney for Plaintiff, at Post Office Box 5059, Montgomery, AL 36103, on this 29 day of January, 2007, by placing a copy of the same in the United States mail, first-class postage prepaid.

                                            Joe W. Adams
                                            Attorney for Defendant