**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JAN BYRNE,** | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Case No. 2:06-CV-1084-WKW** |
| | * | |
| **ALABAMA ALCOHOLIC BEVERAGE** | * | |
| **CONTROL BOARD, and** | * | *JURY TRIAL DEMANDED* |
| **EMORY FOLMAR, in his individual** | * | |
| **and official capacities,** | * | |
| **Defendants.** | * | |

## SECOND AMENDED COMPLAINT

COMES NOW Plaintiff Jan Byrne (hereinafter, "Byrne"), by and through her attorney of record, and would show unto the Court as follows:

## JURISDICTION AND VENUE

1.     Byrne files this Complaint and invokes the jurisdiction of this Court under and by virtue of the Fourteenth Amendment to the Constitution of the United States, 42 U.S.C. § 1983, 42 U.S.C. § 2000e, et seq., 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 2201, 28 U.S.C. § 2202, and the doctrine of supplemental jurisdiction to obtain declaratory relief and compensatory and punitive damages.  Defendants violated Byrne's rights as guaranteed by the Constitution of the United States, by Federal law, and by the laws and Constitution of 1901 of the State of Alabama.

2.     The violations of Byrnes' rights as alleged herein occurred in Montgomery County, Alabama, and were committed within the Northern Division of the Middle District of the State of Alabama.

1

## PARTIES

3.    Byrne is over the age of 19 years, and is and at all times material hereto was a citizen of the United States and the State of Alabama, residing in Autauga County, Alabama.

4.    Defendant Alabama Alcoholic Beverage Control Board (hereinafter, "the Board") is an agency of government of the State of Alabama sited in Montgomery County, Alabama. The Board is being sued for compensatory damages as Byrne's employer under Title VII of the Civil Rights Act of 1964.

5.    Defendant Emory Folmar (hereinafter, "Folmar") is over the age of 19 years, and is and at all times material hereto the Administrator of the Board.  Upon information and belief, Folmar is a citizen of the United States and the State of Alabama, residing in Montgomery County, Alabama.  Folmar is being sued in his individual and official capacities.

## NATURE OF PROCEEDINGS

6.    This is a proceeding for a judgment declaring the relative rights, responsibilities and liabilities of the parties, each to the other, and for injunctive and declaratory relief and compensatory and punitive damages for Byrne's suffering as a consequence of the wrongs alleged herein.

## FACTS

7.    Byrne expressly adopts as if fully set forth herein the allegations in the foregoing paragraphs.

8.    Byrne was employed in or before 1991, by the Board.

9.    As Responsible Vendor Program Alcohol Awareness Coordinator, Byrne was a Division

Chief in the agency governed by the Board, one of seven department heads reporting directly to the Administrator of the Board.

10. Byrne works under the immediate supervision of Folmar. Folmar is the Administrator of the Board and is the person who ultimately took unlawful employment actions and committed other wrongs against Byrne.

11. Byrne is nationally known in the alcohol and tobacco control community. She has frequently presented lectures and training seminars in other states. She holds, or held, several national positions in formulating alcohol and tobacco policy. She has led the Board to several national awards and is considered an expert in retail and youth abuse prevention. She is the designee to serve on national and state task forces and groups to review national standards in her field.

12. Byrne is a female, born on August 26, 1947, and is 59 years of age.

13. At all times material hereto, Byrne has performed her job to the reasonable satisfaction of her employer.

14. As part of her duties, Byrne supervised a substantially younger male employee, Andy Knight.

15. Knight disagreed with her manner of supervision and during November, 2005, filed a grievance against her with the Board's personnel department, also under the supervision of Folmar. This was the second grievance Knight had filed against Byrne; investigations into the first grievance showed no grounds for his complaint.

16. Folmar intervened in the grievance process during an investigation that determined that Byrne had done nothing wrong. He refused to support Byrne; he counseled her on

3

"getting along" with her employees.  Folmar instructed Knight to come directly to him if

he had any complaint about instructions from Byrne, thus undermining Byrne's authority.

17.     Folmar ultimately removed Knight from Byrne's supervision.

18.     On or about November 14, 2005, Byrne attempted to file a complaint of gender

discrimination with the Board's personnel office, but was told by the Acting Personnel

Director that she could not file a "grievance" against Folmar because he was outside the

Merit System.

19.     Following her attempts to complain about Folmar's actions, Byrne was subjected to

retaliatory employment actions.  He would refuse to communicate with her; he refused to

include her in agency-level conferences and decision-making processes; he denied her

requests to attend national meetings; he denied her staffing and budget requests; he

denied technical support to her division; he completely ostracized and isolated her.

20.     During May, 2006, Folmar removed Byrne from the leadership of her program.  He

placed the Responsible Vendor Program under the Enforcement Division.

21.     Byrne nominally had nine employees reporting to her; after the program was transferred,

she had none.

22.     Folmar removed Byrne from membership on all task forces and groups on both the state

and national levels, including groups and committees to which she had been personally

appointed by the State Attorney General and the Governor.  She is no longer permitted by

Folmar to attend any conferences and meetings.

23.     Byrne is no longer allowed to take telephone calls relating to her position; she is no

longer permitted to receive mail relating to her position.

4

24.    At all times material hereto, Byrne held and still holds her former title, although she now reports directly to Knight, her former subordinate, and to another substantially younger male, Vance Patton, the Assistant Director of Enforcement.

25.    Byrne is now performing clerical duties, such as keeping track of the supply of alcohol awareness posters and pamphlets.

26.    Since the time she was removed from her position of responsibility, Byrne has been subjected to differential treatment including heightened scrutiny of her work, and unwarranted reprimands and unwarranted counseling.

27.    Byrne has been publicly humiliated by both Patton and Folmar.

28.    In a public meeting, Folmar called Byrne "out of control," accused her of attending meetings without his knowledge or approval, and announced that she was incapable of managing and supervising a division.  These statements stigmatized Byrne and harmed her professional reputation and standing.

29.    Patton stood outside Byrne's door with one of Byrne's former employees and remarked that the former employee should be glad that the division was now under enforcement, and that she should wish that it had happened a long time ago.

30.    Byrne's former division is now called a bureau.  At bureau meetings with Patton and her former employees, Byrne is not allowed to sit with the professional staff, but she is relegated to sitting with the clerical staff and is dismissed with the clerical staff when the professional staff remains to conduct business.  At all bureau staff meetings, Patton has denigrated Byrne's former leadership and has expounded on how much better things are now that the function reports to him.

5

31.    Byrne's former employees were ordered by Patton not to communicate with Byrne and to report to Patton any attempts by Byrne to contact them.

32.    Patton threatened Byrne with legal action should she be found to have criticized the Board.

33.    With respect to Byrne's legal action the Assistant Administrator of the Board, Chester Weeks, told other employees who had no need to know that if Byrne had run her program properly she wouldn't be in "this mess."

34.    State and national researchers and others in state and national alcohol policy programs have been told by Knight and Patton that Byrne was removed from her position.

35.    In myriad other ways, the Board, Folmar, Patton, Knight and other agents or servants of the Board have worked to marginalize Byrne by stripping her of her office, supplies, equipment, machinery, and vehicle; and in other ways to humiliate her and effectively make her a "non-person."

36.    Following Byrne's removal from her position, there are no female division chiefs.  While there is a female head of the personnel department, she is the Acting Personnel Director and does not have the qualifications to be a permanent Personnel Director.

37.    Byrne has suffered loss of position, title, prestige and status; loss of authority and responsibility; and loss of opportunities for job advancement.  She has suffered severe emotional distress and mental anguish, embarrassment, humiliation, and loss of enjoyment of living.

38.    Byrne has fulfilled all conditions precedent to the filing of this action.

6

## CAUSES OF ACTION

39.    As to each of the counts herein below set forth, Byrnes expressly adopt as if fully set forth

herein the allegations of the foregoing paragraphs.

### COUNT I – GENDER DISCRIMINATION UNDER THE FOURTEENTH AMENDMENT - EMORY FOLMAR, in his individual capacity

40.    At all times material hereto, Folmar was acting pursuant to State statute and was, in fact,

carrying out policies and customs of the State.

41.    Under the Fourteenth Amendment, Byrne had a constitutionally protectible property

interest in her job, a protectible property interest in the freedom to perform her job, and

was entitled to sufficient procedural due process.  Byrne was subjected to a deprivation of

the property right she had in her job and to continuing denigration, belittlement, and

ignominy, and that treatment was due to invidious gender-based discrimination on the

part of Folmar.  Byrne is entitled to recover by way of 42 U.S.C. § 1983.

42.    Folmar injured Byrne's reputation in connection with his violation of her tangible interest

in her job to which she was entitled pursuant to state law.

43.    Byrne was denied process, a hearing, and a chance to be heard, either before or after the

actions were taken against her.

44.    Byrne is a female, as such she is a member of a protected group.

45.    Byrne was qualified for the position she held and was performing her job to the

reasonable satisfaction of her employer.

46.    Byrne was subjected to the additional adverse employment actions: Folmar improperly

intervened and failed to support Byrne during the grievances filed by Knight; Folmar

7

bypassed the grievance procedure by instructing Knight to come directly to him; Folmar removed Byrne from the leadership of the Responsible Vendor Program; Byrne's reporting employees were taken away and they were ordered not to communicate with her; Byrne was removed from all task forces, committees, and appointed positions on both state and national level; Byrne was no longer permitted receive phone calls or mail relating to her position; Byrne holds the same title but now reports directly to Knight and another male; Byrne has been relegated to clerical duties; Byrne has been subjected to unwarranted reprimands; Byrne has been subjected to public humiliation; Byrne is no longer allowed in business meetings; Byrne has been threatened with legal action should she be found to criticize the board; other state official have been told that Byrne was removed from her position; Byrne has been stripped of her office, supplies, equipment, and vehicle. Following Byrne's removal, there are no female division chiefs.

47.    The conduct complained of was undertaken by Folmar because of Byrne's gender.

48.    Byrne was treated differently on the job from a similarly situated member of a non-protected group, a male.

49.    Byrne's rights have been violated in that she has been denied procedural due process.

50.    The aforementioned constitutional and statutory rights were clearly established at the time of the conduct giving rise to the claims herein.

51.    Any reasonable public official knows or should know that the aforementioned rights were clearly established at the time of the conduct giving rise to the claims herein.

52.    Byrne has been injured and damaged thereby.  Byrne has suffered loss of position, title, prestige and status; loss of authority and responsibility; and loss of opportunities for job

advancement.  She has suffered severe emotional distress and mental anguish,

embarrassment, humiliation, and loss of enjoyment of living.

### COUNT II – GENDER DISCRIMINATION UNDER THE FOURTEENTH AMENDMENT - EMORY FOLMAR, in his official capacity

53.  At all times material hereto, Folmar was acting pursuant to State statute and was, in fact, carrying out policies and customs of the State.

54.  Under the Fourteenth Amendment, Byrne had a constitutionally protectible property interest in her job, a protectible property interest in the freedom to perform her job, and was entitled to sufficient procedural due process.  Byrne was subjected to a deprivation of the property right she had in her job and to continuing denigration, belittlement, and ignominy, and that treatment was due to invidious gender-based discrimination on the part of Folmar.  Byrne is entitled to recover by way of 42 U.S.C. § 1983.

55.  Folmar injured Byrne's reputation in connection with his violation of her tangible interest in her job to which she was entitled pursuant to state law.

56.  Byrne was denied process, a hearing, and a chance to be heard, either before or after the actions were taken against her.

57.  Byrne is a female, as such she is a member of a protected group.

58.  Byrne was qualified for the position she held and was performing her job to the reasonable satisfaction of her employer.

59.  Byrne was subjected to the additional adverse employment actions: Folmar improperly intervened and failed to support Byrne during the grievances filed by Knight; Folmar bypassed the grievance procedure by instructing Knight to come directly to him; Folmar

removed Byrne from the leadership of the Responsible Vendor Program; Byrne's
reporting employees were taken away and they were ordered not to communicate with
her; Byrne was removed from all task forces, committees, and appointed positions on
both state and national level; Byrne was no longer permitted receive phone calls or mail
relating to her position; Byrne holds the same title but now reports directly to Knight and
another male; Byrne has been relegated to clerical duties; Byrne has been subjected to
unwarranted reprimands; Byrne has been subjected to public humiliation; Byrne is no
longer allowed in business meetings; Byrne has been threatened with legal action should
she be found to criticize the board; other state official have been told that Byrne was
removed from her position; Byrne has been stripped of her office, supplies, equipment,
and vehicle. Following Byrne's removal, there are no female division chiefs.

60.    The conduct complained of was undertaken by Folmar because of Byrne's gender.

61.    Byrne was treated differently on the job from a similarly situated member of a non-
protected group, a male.

62.    Byrne's rights have been violated in that she has been denied procedural due process.

63.    The aforementioned constitutional and statutory rights were clearly established at the time
of the conduct giving rise to the claims herein.

64.    Any reasonable public official knows or should know that the aforementioned rights were
clearly established at the time of the conduct giving rise to the claims herein.

65.    Byrne has been injured and damaged thereby.  Byrne has suffered loss of position, title,
prestige and status; loss of authority and responsibility; and loss of opportunities for job
advancement.  She has suffered severe emotional distress and mental anguish,

10

embarrassment, humiliation, and loss of enjoyment of living.

### COUNT III –AGE DISCRIMINATION UNDER THE FOURTEENTH AMEMENDMENT - EMORY FOLMAR, in his individual capacity

66.    At all times material hereto, Folmar was acting pursuant to State statute and was, in fact, carrying out policies and customs of the State.

67.    Under the Fourteenth Amendment, Byrne had a constitutionally protectible property interest in her job, a protectible property interest in the freedom to perform her job, and was entitled to sufficient procedural due process.  Byrne was subjected to a deprivation of the property right she had in her job and to continuing denigration, belittlement, and ignominy, and that treatment was due to invidious age-based discrimination on the part of Folmar.  Byrne is entitled to recover by way of 42 U.S.C. § 1983.

68.    Folmar injured Byrne's reputation in connection with his violation of her tangible interest in her job to which she was entitled pursuant to state law.

69.    Byrne was denied process, a hearing, and a chance to be heard, either before or after the actions were taken against her.

70.    Byrne is over the age of 40, as such she is a member of a protected group.

71.    The comparator in this case, Andy Knight, is a substantially younger person.

72.    Byrne was qualified for the position she held and was performing her job to the reasonable satisfaction of her employer.

73.    Byrne was subjected to the additional adverse employment actions: Folmar improperly intervened and failed to support Byrne during the grievances filed by Knight; Folmar bypassed the grievance procedure by instructing Knight to come directly to him; Folmar

11

removed Byrne from the leadership of the Responsible Vendor Program; Byrne's

reporting employees were taken away and they were ordered not to communicate with

her; Byrne was removed from all task forces, committees, and appointed positions on

both state and national level; Byrne was no longer permitted receive phone calls or mail

relating to her position; Byrne holds the same title but now reports directly to Knight and

another male; Byrne has been relegated to clerical duties; Byrne has been subjected to

unwarranted reprimands; Byrne has been subjected to public humiliation; Byrne is no

longer allowed in business meetings; Byrne has been threatened with legal action should

she be found to criticize the board; other state official have been told that Byrne was

removed from her position; Byrne has been stripped of her office, supplies, equipment,

and vehicle. Following Byrne's removal, there are no female division chiefs.

74.     The conduct complained of was undertaken by Folmar because of Byrne's age.

75.     Byrne was treated differently on the job from a similarly situated member of a non-

protected group, a substantially younger male, Andy Knight.

76.     Byrne's rights have been violated in that she has been denied procedural due process

77.     The aforementioned constitutional and statutory rights were clearly established at the time

of the conduct giving rise to the claims herein.

78.     Any reasonable public official knows or should know that the aforementioned rights were

clearly established at the time of the conduct giving rise to the claims herein.

79.     Byrne has been injured and damaged thereby.  Byrne has suffered loss of position, title,

prestige and status; loss of authority and responsibility; and loss of opportunities for job

advancement.  She has suffered severe emotional distress and mental anguish,

embarrassment, humiliation, and loss of enjoyment of living.

## COUNT IV – AGE DISCRIMINATION UNDER THE FOURTEENTH AMENDMENT-EMORY FOLMAR, in his official capacity

80.    At all times material hereto, Folmar was acting pursuant to State statute and was, in fact, carrying out policies and customs of the State.

81.    Under the Fourteenth Amendment, Byrne had a constitutionally protectible property interest in her job, a protectible property interest in the freedom to perform her job, and was entitled to sufficient procedural due process.  Byrne was subjected to a deprivation of the property right she had in her job and to continuing denigration, belittlement, and ignominy, and that treatment was due to invidious age-based discrimination on the part of Folmar.  Byrne is entitled to recover by way of 42 U.S.C. § 1983.

82.    Folmar injured Byrne's reputation in connection with his violation of her tangible interest in her job to which she was entitled pursuant to state law.

83.    Byrne was denied process, a hearing, and a chance to be heard, either before or after the actions were taken against her.

84.    Byrne is over the age of 40, as such she is a member of a protected group.

85.    The comparator in this case, Andy Knight, is a substantially younger person.

86.    Byrne was qualified for the position she held and was performing her job to the reasonable satisfaction of her employer.

87.    Byrne was subjected to the additional adverse employment actions: Folmar improperly intervened and failed to support Byrne during the grievances filed by Knight; Folmar bypassed the grievance procedure by instructing Knight to come directly to him; Folmar

13

removed Byrne from the leadership of the Responsible Vendor Program; Byrne's

reporting employees were taken away and they were ordered not to communicate with

her; Byrne was removed from all task forces, committees, and appointed positions on

both state and national level; Byrne was no longer permitted receive phone calls or mail

relating to her position; Byrne holds the same title but now reports directly to Knight and

another male; Byrne has been relegated to clerical duties; Byrne has been subjected to

unwarranted reprimands; Byrne has been subjected to public humiliation; Byrne is no

longer allowed in business meetings; Byrne has been threatened with legal action should

she be found to criticize the board; other state official have been told that Byrne was

removed from her position; Byrne has been stripped of her office, supplies, equipment,

and vehicle. Following Byrne's removal, there are no female division chiefs.

88.    The conduct complained of was undertaken by Folmar because of Byrne's age.

89.    Byrne was treated differently on the job from a similarly situated member of a non-

protected group, a substantially younger male, Andy Knight.

90.    Byrne's rights have been violated in that she has been denied procedural due process

91.    The aforementioned constitutional and statutory rights were clearly established at the time

of the conduct giving rise to the claims herein.

92.    Any reasonable public official knows or should know that the aforementioned rights were

clearly established at the time of the conduct giving rise to the claims herein.

93.    Byrne has been injured and damaged thereby.  Byrne has suffered loss of position, title,

prestige and status; loss of authority and responsibility; and loss of opportunities for job

advancement.  She has suffered severe emotional distress and mental anguish,

14

embarrassment, humiliation, and loss of enjoyment of living.

## COUNT V – GENDER DISCRIMINATION UNDER TITLE VII BASED ON A TANGIBLE EMPLOYMENT ACTION - ALABAMA ALCOHOLIC BEVERAGE CONTROL BOARD

94.    Byrne is a member of a protected group, female.

95.    Byrne was subjected to disparate and adverse treatment to which members of a non-

       protected group, male, were not subjected.

96.    Byrne was qualified for the position she held and was performing her job to the

       reasonable expectations of her employer.

97.    Byrne was subjected to the following adverse employment actions: Folmar removed

       Byrne from the leadership of the Responsible Vendor Program; Byrne was removed from

       all task forces, committees, and appointed positions on both state and national level; and,

       other state official have been told that Byrne was removed from her position.

98.    Following Byrne's removal, there are no female division chiefs.

99.    Byrne has been injured and damaged thereby.  Byrne has suffered loss of position, title,

       prestige and status; loss of authority and responsibility; and loss of opportunities for job

       advancement.  She has suffered severe emotional distress and mental anguish,

       embarrassment, humiliation, and loss of enjoyment of living.

## COUNT VI – GENDER DISCRIMINATION UNDER TITLE VII BASED ON A HOSTILE WORK ENVIRONMENT - ALABAMA ALCOHOLIC BEVERAGE CONTROL BOARD

100.   Byrne is a member of a protected group, female.

101.   Byrne was subjected to disparate and adverse treatment to which members of a non-

       protected group, male, were not subjected.

15

102.    Byrne was qualified for the position she held and was performing her job to the
reasonable expectations of her employer.

103.    Byrne was subjected to the following adverse employment actions: Folmar improperly
intervened and failed to support Byrne during the grievances filed by Knight; Folmar
bypassed the grievance procedure by instructing Knight to come directly to him; Byrne's
reporting employees were taken away and they were ordered not to communicate with
her; Byrne was no longer permitted receive phone calls or mail relating to her position;
Byrne holds the same title but now reports directly to Knight and another male; Byrne has
been relegated to clerical duties; Byrne has been subjected to unwarranted reprimands;
Byrne has been subjected to public humiliation; Byrne is no longer allowed in business
meetings; Byrne has been threatened with legal action should she be found to criticize the
board; Byrne has been stripped of her office, supplies, equipment, and vehicle.

104.    Following Byrne's removal, there are no female division chiefs.

105.    Byrne has been injured and damaged thereby.  Byrne has suffered loss of position, title,
prestige and status; loss of authority and responsibility; and loss of opportunities for job
advancement.  She has suffered severe emotional distress and mental anguish,
embarrassment, humiliation, and loss of enjoyment of living.

**COUNT VII – RETALIATION UNDER TITLE VII BASED ON A TANGIBLE
EMPLOYMENT ACTION - ALABAMA ALCOHOLIC BEVERAGE CONTROL
BOARD**

106.    Byrne opposed an unlawful employment practice by attempting to complain about gender
discrimination.

107.    After her attempt to file a complaint of gender discrimination with the Board's personnel

office, Byrne was told she could not file a "grievance" against Folmar.

108.    Following her attempt to file a grievance, Byrne was subjected to the following adverse

employment actions: Folmar removed Byrne from the leadership of the Responsible

Vendor Program; Byrne was removed from all task forces, committees, and appointed

positions on both state and national level; and, other state official have been told that

Byrne was removed from her position.

109.    Byrne was subjected to a deprivation of the rights enumerated above as a result of

retaliation for having opposed an unlawful employment action.

110.    There is a causal connection between Byrne's opposition to unlawful employment

practices and the adverse employment actions taken against her.

111.    Byrne has been damaged thereby.  Byrne has suffered loss of position, title, prestige and

status; loss of authority and responsibility; and loss of opportunities for job advancement.

She has suffered severe emotional distress and mental anguish, embarrassment,

humiliation, and loss of enjoyment of living.

### COUNT VIII – RETALIATION UNDER TITLE VII BASED ON A HOSTILE WORK ENVIRONMENT - ALABAMA ALCOHOLIC BEVERAGE CONTROL BOARD

112.    Byrne opposed an unlawful employment practice by attempting to complain about gender

discrimination.

113.    After her attempt to file a complaint of gender discrimination with the Board's personnel

office, Byrne was told she could not file a "grievance" against Folmar.

114.    Following her complaint about Folmar's actions, Byrne was subjected to the following

adverse employment actions: Folmar refused to communicate with Byrne or include her

in conferences and decision-making processes; he denied her requests to attend national meetings; he denied her staffing and budget requests; he denied technical support to her division; he completely ostracized and isolated her.

115.   Byrne was subjected to the following additional adverse employment actions: Folmar improperly intervened and failed to support Byrne during the grievances filed by Knight; Folmar bypassed the grievance procedure by instructing Knight to come directly to him; Byrne's reporting employees were taken away and they were ordered not to communicate with her; Byrne was no longer permitted receive phone calls or mail relating to her position; Byrne holds the same title but now reports directly to Knight and another male; Byrne has been relegated to clerical duties; Byrne has been subjected to unwarranted reprimands; Byrne has been subjected to public humiliation; Byrne is no longer allowed in business meetings; Byrne has been threatened with legal action should she be found to criticize the board; Byrne has been stripped of her office, supplies, equipment, and vehicle.

116.   Byrne was subjected to a deprivation of the rights enumerated above as a result of retaliation for having opposed an unlawful employment action.

117.   There is a causal connection between Byrne's opposition to unlawful employment practices and the adverse employment actions taken against her.

118.   Byrne has been damaged thereby.  Byrne has suffered loss of position, title, prestige and status; loss of authority and responsibility; and loss of opportunities for job advancement. She has suffered severe emotional distress and mental anguish, embarrassment, humiliation, and loss of enjoyment of living.

18

**PRAYER FOR RELIEF**

WHEREFORE, THE PREMISES CONSIDERED, Byrne prays for relief as follows:

a)    Enter a declaratory judgment that the policies and practices complained of herein
      are unlawful and violative of the Fourteenth Amendment to the United States
      Constitution, as addressed by and through 42 USC.A § 1983;

b)    Grant compensatory damages in favor of Byrne as against defendant Folmar in his
      individual capacity of $500,000.00 or, in the alternative, nominal damages;

c)    Grant punitive damages in favor of Byrne as against defendant Folmar in his
      individual capacity of $500,000.00 or, in the alternative, nominal damages;

d)    For violation of Title VII of the Civil Rights Act of 1964, grant compensatory
      damages in favor of Byrne as against the Board of $300,000.00 or, in the
      alternative, nominal damages;

e)    Grant Byrne such equitable relief as would effectuate the purpose of the statutes
      invoked, including as against Folmar in his official capacity and the Board,
      reinstatement to the authority, responsibility, terms, conditions, and privileges of
      her employment as it existed prior to the acts herein complained of;

f)    Grant Byrne the cost of this action including reasonable attorneys' fees;

g)    Grant such other, further and different relief as this Court may deem just and
      proper, including all equitable relief, the awarding of which is within the
      jurisdiction of the Court.

19

RESPECTFULLY SUBMITTED this 31st day of March, 2008.

/s/ FRED CLEMENTS
Jay Lewis
Fred Clements
Attorneys for Plaintiff
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, Alabama, 36103
334-263-7733 (voice)
334-263-7733 (fax)
FredClements@JayLewisLaw.com
ASB-5682-R39C

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following parties or counsel:

Joseph W. Adams
P.O. Box 1487
Ozark, AL 36361

Hon. Troy King
11 S. Union St.
Montgomery, AL 36130

/s/ FRED CLEMENTS
Fred Clements
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, Alabama 36103
(334) 263-7733 (Voice)
(334) 832-4390 (Fax)
FredClements@JayLewisLaw.com
ASB-5682-R39C
Attorney for Plaintiff

20