# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| JAN BYRNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO.: 2:06-CV-1084-WKW |
| | ) | |
| ALABAMA ALCOHOLIC BEVERAGE | ) | |
| CONTROL BOARD, and | ) | |
| EMORY FOLMAR, in His Individual | ) | |
| and Official Capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION BY DEFENDANTS
ALABAMA ALCOHOLIC BEVERAGE CONTROL BOARD AND
EMORY FOLMAR TO DISMISS FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF CAN BE GRANTED**

s/Joseph W. Adams
Joseph W. Adams
Post Office Box 1487
Ozark, Alabama 36361
Tel: (334) 774-5533
Fax: (334) 774-1252
E-Mail: Joeadamslaw@aol.com
Bar Number: ASB-3743-A34J

s/Robert A. Huffaker
Robert A. Huffaker
Rushton, Stakely, Johnston
   & Garrett, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Tel: (334) 206-3215
Fax: (334) 481-0814
E-Mail: rah@rsjg.com
Bar Number: ASB-7668-U79R

Attorneys for Defendants Alabama
Alcoholic Beverage Control Board
and Emory Folmar

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     42 U.S.C. § 1983
     Fed. R. Civ. P. 12(b)(6)
     *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007)
     *Cook v. Campbell*, 482 F. Supp. 2d 1341 (M.D. Ala. 2007)
     *Gilmore v. Day*, 125 F. Supp. 2d 468 (M.D. Ala. 2000)

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.     COUNTS I AND III—42 U.S.C. § 1983 CLAIMS AGAINST
           FOLMAR IN HIS INDIVIDUAL CAPACITY UNDER THE
           FOURTEENTH AMENDMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

           42 U.S.C. § 1983

           1.     Absolute Legislative Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

                  42 U.S.C. § 1983
                  *Bogan v. Scott-Harris,* 523 U.S. 44, 118 S. Ct. 966 (1998)
                  *Macuba v. Deboer*, 193 F.3d 1316 (11th Cir. 1999)

           2.     Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                  U.S. Constitution amend. XIV
                  42 U.S.C. § 1983
                  *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034 (1987)
                  *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d
                      797 (11th Cir. 1998)
                  *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982)
                  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir.
                    2004)

**TABLE OF CONTENTS (CONT'D)**

Page

a.      Due Process—Property Interest . . . . . . . . . . . . . . . . . . . . . . 6

        *Batagiannis v. W. Lafayette Cmty. Sch. Corp.*, 454
               F.3d 738 (7th Cir. 2006)
        *Harris v. Bd. of Educ. of City of Atlanta*, 105 F.3d 591
               (11th Cir. 1997)

b.      Due Process—Liberty Interest . . . . . . . . . . . . . . . . . . . . . . . 8

        42 U.S.C. § 1983
        *Barnette v. Folmar*, 64 F.3d 598 (11th Cir. 1995)
        *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 92
               S. Ct. 2701 (1972)
        *Howe v. Baker*, 796 F.2d 1355 (11th Cir. 1986)
        *Price v. Univ. of Ala.*, 318 F. Supp. 2d 1084
               (N.D. Ala. 2003)

c.      Equal Protection—Retaliation . . . . . . . . . . . . . . . . . . . . . . . 10

        42 U.S.C. § 1983
        11th Cir. R. 36-2
        *Eldridge v. Morrison*, 970 F. Supp. 928 (M.D. Ala. 1996)
        *Gardner v. City of Camilla, Ga.*, 2006 WL 1687650
               (11th Cir. 2006) (unpublished)
        *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338 (11th Cir. 1995)

d.      Equal Protection—Gender and Age  . . . . . . . . . . . . . . . . . . 11

        42 U.S.C. § 1983
        *Akins v. Fulton County, Ga.*, 420 F.3d 1293 (11th Cir. 2005)
        *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232
               (11th Cir. 2001)
        *Mencer v. Hammonds*, 134 F.3d 1066 (11th Cir. 1998)
        *Portera v. Ala. Dep't of Fin.*, 322 F. Supp. 2d 1285
               (M.D. Ala. 2004), *aff'd without published opinion*,
               133 F. App'x 739 (11th Cir. 2005)

**TABLE OF CONTENTS (CONT'D)**

Page

       *Robertson v. Ala. Dep't of Econ. & Cmty. Affairs*,
       902 F. Supp. 1473 (M.D. Ala. 1995)

B.     COUNTS II AND IV—42 U.S.C. § 1983 CLAIMS AGAINST
      FOLMAR IN HIS OFFICIAL CAPACITY UNDER THE
      FOURTEENTH AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      U.S. Const. amend. XI
      U.S. Const. amend. XIV
      42 U.S.C. § 1983
      *Carr v. City of Florence*, 916 F.2d 1521 (11th Cir. 1990)
      *Cross v. Alabama*, 49 F.3d 1490 (11th Cir. 1995)
      *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)

C.     EEOC CHARGE AND RIGHT-TO-SUE LETTER . . . . . . . . . . . . . . . . 15

      *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562 (11th Cir.
         1996)
      *Malone v. K-Mart Corp.*, 51 F. Supp. 2d 1287 (M.D. Ala. 1999)

D.     COUNT V—TANGIBLE EMPLOYMENT ACTION SEX
      DISCRIMINATION UNDER TITLE VII AGAINST THE
      BOARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      42 U.S.C. § 1983
      *Anderson v. United Parcel Serv., Inc.*, 2007 WL 2669706 (11th Cir. 2007)
      *Burney v. Rheem Mfg. Co.*, 196 F.R.D. 659 (M.D. Ala. 2000)
      *Butler v. Ala. Dep't of Transp.*, 512 F. Supp. 2d 1209 (M.D. Ala. 2007)
      *Nettles v. LSG Sky Chefs*, 2006 WL 3345290 (11th Cir. 2006)
      *Nicholas v. Bd. of Trs. of Univ. of Ala.*, 2007 WL 3023209 (11th
         Cir. 2007)
      *Osahar v. Postmaster Gen. of U.S. Postal Serv.*, 2008 WL 123959
         (11th Cir. 2008) (unpublished)
      *Rojas v. Florida*, 285 F.3d 1339 (11th Cir. 2002)
      *Sasser v. Ala. Dep't of Corr.*, 373 F. Supp. 2d 1276 (M.D. Ala.
         2005)

**TABLE OF CONTENTS (CONT'D)**

*Swanson v. Civil Air Patrol*, 37 F. Supp. 2d 1312 (M.D. Ala. 1998)
*Taylor v. CSX Transp.*, 418 F. Supp. 2d 1284 (M.D. Ala. 2006)
*Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192 (11th Cir. 2004)
*Williams v. Motorola, Inc.*, 303 F.3d 1284 (11th Cir. 2002)
*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004)

E.    COUNT VI—HOSTILE WORK ENVIRONMENT SEX
      DISCRIMINATION UNDER TITLE VII AGAINST THE
      BOARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Agee v. Potter*, 2007 WL 332220 (11th Cir. 2007) (unpublished)
*Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287 (11th Cir. 2007)
*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508 (2001)
*Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227
        (11th Cir.  2006)
*Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232 (11th Cir. 2001)
*Grant v. Bullock County Bd. of Educ.*, 895 F. Supp. 1506 (M.D. Ala.
        1995)
*Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999)
*Nettles v. LSG Sky Chefs*, 2006 WL 3345290 (11th Cir. 2006)
*Pate v. West Publ'g Corp.*, 416 F. Supp. 2d 1275 (M.D. Ala. 2006)
*Pa. State Police v. Suders*, 542 U.S. 129, 124 S. Ct. 2342 (2004)

F.    COUNT VII—TANGIBLE EMPLOYMENT ACTION
      RETALIATION UNDER TITLE VII AGAINST THE
      BOARD  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

42 U.S.C. § 1983
*Adams v. Cobb County Sch. Dist.*, 2007 WL 1720430 (11th Cir. 2007)
*Brown v. City of Opelika*, 2006 WL 3690693 (11th Cir. 2006)
*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 126
        S. Ct. 2405 (2006)
*Byrd v. Auburn Univ. Montgomery*, 2008 WL 624025 (11th Cir. 2008)
*Cannon v. Dyncorp*, 462 F. Supp. 2d 1190 (M.D. Ala. 2005)
*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508
*Dale v. Wynne*, 497 F. Supp. 2d 1337 (M.D. Ala. 2007)

# TABLE OF CONTENTS (CONT'D)

**Page**

*Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955 (11th Cir. 2008)

*Drakeford v. Ala. Coop. Extension Sys.*, 416 F. Supp. 2d 1286 (M.D. Ala. 2006)

*Edmondson v. Bd. of Trs. of Univ. of Ala.*, 2007 WL 4234549 (11th Cir. 2007)

*Gaddis v. Russell Corp.*, 242 F. Supp. 2d 1123 (M.D. Ala. 2003)

*Mathis v. Leggett & Platt*, 2008 WL 124512 (11th Cir. 2008) (unpublished)

*Penn v. Dep't of Corr.*, 411 F. Supp. 2d 1326 (M.D. Ala. 2005)

*Portera v. Ala. Dep't of Fin.*, 322 F. Supp. 2d 1285 (M.D. Ala. 2004), *aff'd without published opinion*, 133 F. App'x 739 (11th Cir. 2005)

G.     COUNT VIII—HOSTILE WORK ENVIRONMENT RETALIATION UNDER TITLE VII AGAINST THE BOARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Collier v. City of Opelika*, 374 F. Supp. 2d 1098 (M.D. Ala. 2004)

*Portera v. Winn Dixie of Montgomery, Inc.*, 996 F. Supp. 1418 (M.D. Ala. 1998)

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## I. INTRODUCTION

Plaintiff Jan Byrne ("Byrne") filed her Complaint in this matter on December 4, 2006.

On December 29, 2006, Defendant Emory Folmar ("Folmar") submitted a motion to dismiss this action against him, and in the alternative for a more definite statement. In part, the motion to dismiss was based on the ground that Folmar is entitled to immunity from liability for damages under 42 U.S.C. § 1983. Plaintiff, through her attorney of record, submitted her response to the motion to dismiss on January 9, 2007. Defendant Folmar submitted a reply to the Plaintiff's response.

In an Order dated March 12, 2008, this Court denied Folmar's motion to dismiss without prejudice, but granted his motion for a more definite statement. The court ordered Byrne to file a second amended complaint on or before March 31, 2008, addressing the court's concerns about not stating each cause of action in a separate count, not specifying which counts are against which defendants, not indicating clearly whether the sex discrimination claims are based on the creation of a hostile work environment or a tangible employment action, and not identifying specific acts constituting adverse employment actions for purposes of the claims under Title VII of the Civil Rights Act of 1964.

Byrne filed her eight-count Second Amended Complaint on March 31, 2008. Defendants Alabama Alcoholic Beverage Control Board ("the Board") and Folmar submit that the Second Amended Complaint should be dismissed in its entirety pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim for which relief may be granted.

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a complaint. *Gilmore v. Day*, 125 F. Supp. 2d 468 (M.D. Ala. 2000). If, upon reviewing pleadings, it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint. *Cook v. Campbell*, 482 F. Supp. 2d 1341 (M.D. Ala. 2007).

While a complaint attacked by a motion to dismiss for failure to state a claim upon which relief can be granted does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice; to survive a motion to dismiss for failure to state a claim upon which relief can be granted, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact. *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007).

The Board and Folmar address the Second Amended Complaint according to its Counts I-VIII, as follows.

## II.  ARGUMENT

**A.**    **COUNTS I AND III—42 U.S.C. § 1983 CLAIMS AGAINST FOLMAR IN HIS INDIVIDUAL CAPACITY UNDER THE FOURTEENTH AMENDMENT.**

### 1.    Absolute Legislative Immunity

While Folmar, as Administrator of the Board, does not occupy a legislative office nor hold such a legislative title, it is still possible under federal law for him to engage in a legislative function and thereby to be entitled to the absolute immunity that is accorded legislative action.  Officials outside the legislative branch are entitled to legislative immunity from suit when they perform legislative functions.  *Bogan v. Scott-Harris,* 523 U.S. 44, 118 S. Ct. 966 (1998) (mayor's introduction of a budget and signing into law an ordinance were formally legislative, and immunized as such, even though he was an executive official).

Folmar submits that the acts of which Byrne complains (Second Am. Compl. ¶¶ 20-22, 24, 30), that is, the various organizational changes Folmar made and, in particular, his decision to place the Responsible Vendor Program in the Enforcement Division, were legislative acts for which he has absolute immunity.  This being so is indicated by *Bogan* itself, as well as by Eleventh Circuit precedent.  In *Bogan*, an ordinance adopted by city officials eliminating a city department, of which the civil rights complainant was the sole employee, was determined to be legislative in substance and the city officials were entitled to absolute immunity from a 1983 suit; the ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provided to

3

its constituents. 523 U.S. at 55-56. There could hardly be a more accurate description of the legislative nature of the actions of Folmar that are at the heart of this case.

As for the Eleventh Circuit, in *Macuba v. Deboer*, 193 F.3d 1316 (11th Cir. 1999), county commissioners' actions, in voting to reorganize land-use departments and approving a unified structure for the county development department, were "quintessentially legislative" functions, and thus the commissioners were entitled to absolute immunity from a § 1983 suit brought by a county license investigator whose position was eliminated during the reorganization. The plaintiff in *Macuba* had alleged that the county and its commissioners abolished his position and denied him employment in another position because of his whistle-blowing activities and his contact with the press, in violation of his right to free speech.

As in *Bogan* and *Macuba*, Byrne's challenges to actions which affected her employment concern organizational and budgetary decisions that are "quintessentially legislative." Accordingly, Folmar, who made those decisions, is entitled to absolute legislative immunity.

2.    **Qualified Immunity**

Assuming only for argument's sake that Folmar does not have absolute legislative immunity, he nonetheless enjoys qualified immunity from liability under § 1983.

When state officials are sued in their individual capacities for discretionary acts, application of qualified immunity to their actions is the rule rather than the exception, and

4

only in exceptional cases will government actors have no shield against claims made against them in their individual capacities; unless a government agent's act is so obviously wrong, in light of preexisting law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797 (11th Cir. 1998).

It is indisputable that Folmar as administrator, was engaged in discretionary functions in taking the actions of which Byrne complains. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004) (instead of focusing on whether the challenged acts of a government employee seeking qualified immunity involved the exercise of actual discretion, a court assesses whether they were of a type that fell within the employee's job responsibilities, and the inquiry is two-fold; the court asks whether the government employee was (a) performing a legitimate job-related function, i.e., pursuing a job-related goal, (b) through means that were within his power to utilize). Previously, Byrne has asserted in this case that qualified immunity is not available to Folmar because the federal constitutional rights which Folmar allegedly violated were clearly established at the relevant times, within the meaning of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982). There is no question that, in the abstract, the Fourteenth Amendment rights of public employees were clearly established in 2006, but that is not the proper standard for qualified immunity.

To avoid the protection of qualified immunity on the basis that the right which an official allegedly violated is "clearly established," *Anderson v. Creighton*, 483 U.S. 635, 107

S. Ct. 3034 (1987), instructs that the contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right; in other words, the standard is a particularized one, making it necessary to consider the particulars of each case, not merely whether there is a general right to due process or equal protection. *See Braddy*, 133 F.3d at 801 (to prove that a state official was not qualifiedly immune from a § 1983 claim alleging race and sex discrimination, the employee was required to show that when the official acted as she did, the law was developed in such a concrete and factually defined context as to make it obvious to all reasonable government actors, in the official's place, that what she was doing violated federal law).

For each of the particular claims asserted against Folmar under § 1983, there is a clear basis for finding that a reasonable official in Folmar's position would not reasonably have believed that his actions were violating the Plaintiff's clearly established constitutional rights.

### a.    Due Process—Property Interest

Regarding the allegation that Folmar deprived Byrne of a property interest in her job without affording her due process (Second Am. Compl. ¶¶ 41, 43, 49), no official in Folmar's position would have reasonably believed that Folmar's actions were such as to deprive the Plaintiff of whatever property interest she may have had in her position.  In *Harris v. Bd. of Educ. of City of Atlanta*, 105 F.3d 591 (11th Cir. 1997), the court held that members of a city's board of education could not have reasonably believed that they were acting illegally in relieving a school superintendent of his responsibilities while continuing to pay him the

economic benefits of his position, and thus the members as individuals were qualifiedly immune from the superintendent's suit claiming deprivation of a property right without due process; at the time that the board acted, courts agreed that a public official had a constitutionally protected property interest only in the economic benefits of his position, and did not have any right to actually hold the position and execute its duties.

The Eleventh Circuit has not departed from this principle since it decided *Harris*. In fact, *Harris* has been cited by another federal circuit court as support for a similar ruling. *See Batagiannis v. W. Lafayette Cmty. Sch. Corp.*, 454 F.3d 738, 741 (7th Cir. 2006) ("Every appellate decision that has addressed the subject accordingly has held that a contractual right to be a superintendent of schools creates a property interest in the salary of that office but not the ability to make decisions on behalf of the public.").

In this case Byrne has admitted that at all material times, and to the present, she has held the same job title. (Second Am. Compl. ¶ 24.) She has not alleged, nor could she on the facts of this case, that she has suffered any loss of pay or benefits as a result of the alleged actions of Folmar. Rather, she has objected to the effects on the day-to-day aspects of her job, such as who supervises whom, which have resulted from the organizational changes made by Folmar. Byrne has no constitutionally protected property interest in such matters. At the very least, it certainly was not clearly established that she had such a constitutional right, thereby making Folmar immune from this claim.

7

### b.     Due Process—Liberty Interest

Byrne has alleged that, by his statements and actions, Folmar "stigmatized" her and injured her reputation in connection with her job.   (Second Am. Compl. ¶¶ 28, 42.) Presumably, this is an attempt to assert a claim that Folmar deprived the Plaintiff of a liberty interest without due process of law.  This claim is fatally deficient in a number of respects, including the absence of any allegation that Folmar made truly stigmatizing statements that were false, that such statements were publicly disseminated, or that Byrne has been injured in her ability to secure future employment. Byrne remains in her job, so she has not experienced difficulty in obtaining employment. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 92 S. Ct. 2701 (1972) (where state, in declining to rehire assistant professor at state university, did not make any charge against him that might seriously damage his standing and associations in his community, and there was no suggestion that state imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities, he was not deprived of "liberty" protected by the Fourteenth Amendment when he simply was not rehired in the job, but remained as free as before to seek another); *Price v. Univ. of Ala.*, 318 F. Supp. 2d 1084 (N.D. Ala. 2003) (state university president did not violate any liberty interest of football coach in course of firing him, precluding claim of wrongful termination in violation of coach's due process rights; no statements of sufficiently stigmatizing nature were made in connection with firing).

It is sufficient support for Folmar's immunity defense to this claim that it is not at all clearly established that a public employee can assert a liberty-interest claim when she has not lost her position at all, but merely complains that aspects of her job have changed. *See Barnette v. Folmar*, 64 F.3d 598 (11th Cir. 1995) (plaintiff former police officers failed to show that mayor and police officials were not entitled to qualified immunity on claim of constructive discharge, since allowing officers to resign rather than bring them up on formal charges after "sting operation" could have reasonably seemed to be no discharge at all in light of then-existing law; chief of police, who made stigmatizing public remark regarding officers who resigned rather than face formal charges after sting operation—that former officers were "dirty cops"— was entitled to qualified immunity on claim by former officers that they were deprived of liberty interest without due process, since officers had already resigned before chief made stigmatizing remark, and it was not clearly established that officers' resignations were "discharges"); *Howe v. Baker*, 796 F.2d 1355 (11th Cir. 1986) (neither state's attorney nor investigator in his office could be held liable in damages, in § 1983 suit, for alleged deprivation of liberty interest in placing in state trooper's public record a letter stating that because of prior problems with trooper's credibility, prosecutor felt he could not conscientiously file trooper's cases; under then-existing law it was not certain what invaded interest would constitute the "plus" of the stigma-plus test for determining whether the public statements deprived the object of those statements of a due process liberty interest).

In this case, Folmar denies, and Byrne has not sufficiently alleged, that he said anything stigmatizing about Byrne. In any event, however, it is clear as a matter of law that Byrne cannot meet the "plus" component of the "stigma-plus" test. That is, she cannot have been injured in her ability to secure other employment because she has kept her current position (with no loss of pay or benefits) during all times relevant to this action.

### c.    Equal Protection—Retaliation

Byrne alleged in her initial complaint that Folmar violated her right to equal protection by retaliating against her for having opposed unlawful employment actions. (Second Am. Compl. ¶¶ 44, 47, 49.) Any reasonable reading of the Second Amended Complaint is that she has dropped this claim against Folmar in his individual capacity. Assuming only for argument's sake that the Second Amended Complaint asserts such a claim, it is subject to dismissal.

The Eleventh Circuit has stated that no clearly established right exists under the Equal Protection Clause to be free from retaliation. *Gardner v. City of Camilla, Ga.*, 2006 WL 1687650 (11th Cir. 2006). (*Gardner*, as an unpublished decision, is not binding precedent, but, like all unpublished decisions cited *infra*, it still may be used as persuasive authority. 11th Cir. R. 36-2.) In that case, a city manager and a fire chief were entitled to qualified immunity on § 1983 claims by fire department employees that they were retaliated against in violation of their right to equal protection.

The court in *Gardner* cited and relied upon *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338 (11th Cir. 1995) (county police officials were entitled to qualified immunity from claim of county employee that they violated equal protection by retaliating against her for her complaints of sex discrimination, as there is no clearly established right under the Equal Protection Clause to be free from retaliation).  In accord with *Gardner* and *Ratliff* is *Eldridge v. Morrison*, 970 F. Supp. 928 (M.D. Ala. 1996) (no established right exists under Equal Protection Clause to be free from retaliation, and correctional facility officials were thus qualifiedly immune from § 1983 action alleging deprivation of such right).

Since there is no clearly established right under the Equal Protection Clause to be protected from retaliation in public employment, Folmar is also immune from liability for such a claim.

      d.    **Equal Protection—Gender and Age**

Byrne's allegations of a violation of equal protection based on her gender and age (Second Am. Compl. ¶¶ 44, 45, 47, 48, 70-72, 74,75) are similarly insufficient to overcome Folmar's qualified immunity defense.

First, in the same respect in which her other § 1983 claims are deficient, the absence of any change in Byrne's title, compensation, or benefits is fatal to such claims and makes Folmar immune from them.  *See Portera v. Ala. Dep't of Finance*, 322 F. Supp. 2d 1285 (M.D. Ala. 2004) (supervisor of a white state finance department security systems analyst was entitled to qualified immunity from suit by an analyst claiming that her equal protection

11

rights were violated when she was essentially stripped of all duties and left to sit in her office

with nothing to do, while her pay and benefits were continued; it was not clear at time that

action in question violated Equal Protection Clause), *aff'd without published opinion*, 133 F.

App'x 739 (11th Cir. 2005).  In any event, Byrne was not made to sit in an office with nothing

at all to do, so that her claim is substantially weaker than was the claim in *Portera*.

       The Eleventh Circuit has addressed this issue, as follows:

> Work assignment claims strike at the very heart of an employer's
> business judgment and expertise because they challenge an employer's ability
> to allocate its assets in response to shifting and competing market priorities.
> The same concern exists for public entities such as the Town's Police
> Department, which must balance limited personnel resources with the wide
> variety of critically important and challenging tasks expected of them by the
> public.
>
> For these reasons, applying the adverse action requirement carefully is
> especially important when the plaintiff's claim is predicated on his
> disagreement with his employer's reassignment of job tasks. Courts elsewhere
> have been reluctant to hold that changes in job duties amount to adverse
> employment action when unaccompanied by any tangible harm.
>
> . . . .
>
> In the vast majority of instances . . . we think an employee alleging a
> loss of prestige on account of a change in work assignments, without any
> tangible harm, will be outside the protection afforded by Congress in Title
> VII's anti-discrimination clause—especially where, as here, the work
> assignment at issue is only by definition temporary and does not affect the
> employee's permanent job title or classification.

*Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1244-45 (11th Cir. 2001) (citations

omitted); *see also Akins v. Fulton County, Ga.*, 420 F.3d 1293 (11th Cir. 2005) (official in

county's purchasing department could not reasonably have foreseen, in light of existing case

law, that conduct which resulted in "constructive transfer" of one of his employees to another department, with same pay, vacation, and sick leave, might constitute "adverse employment action," and was entitled to qualified immunity from liability under § 1983 for actions resulting in employee's transfer; transfer of public employee to another position, with same pay, vacation, and sick leave, and following which she was even reclassified to higher pay rate, did not qualify as "adverse employment action"). While *Davis* concerned a claim of employment discrimination under Title VII, not § 1983, the analysis under the two statutes is the same, as is shown by the ruling in *Akins*. This is further indicated by the fact that *Davis* was cited and relied upon by the court in *Portera,* although the court there was dealing with a discrimination claim under § 1983.

A second, independent basis for finding Folmar immune from liability for the alleged claims of gender and age discrimination under § 1983 is the absence of any allegations of specific facts, as opposed to mere conclusory allegations (Second Am. Compl. ¶¶ 47, 74), indicating that Folmar acted with a discriminatory intent based on Byrne's gender or age. *See Mencer v. Hammonds*, 134 F.3d 1066 (11th Cir. 1998) (superintendent was entitled to qualified immunity in former teacher's action alleging that failure to promote teacher to principal violated Equal Protection Clause, as statements cited by teacher, which were ambiguous and were not related to teacher's particular case, would not support finding of discriminatory intent, as required to show equal protection violation); *Robertson v. Ala. Dep't of Econ. & Cmty. Affairs*, 902 F. Supp. 1473 (M.D. Ala. 1995) (state officials enjoyed

qualified immunity from worker's claim that her transfer and alleged mistreatment constituted sex discrimination in violation of Fourteenth Amendment; state employee failed to state prima facie case of sexual discrimination in violation of Equal Protection Clause of Fourteenth Amendment, since worker's treatment was not based on her status as female).

**B.    COUNTS II AND IV—42 U.S.C. § 1983 CLAIMS AGAINST FOLMAR IN HIS OFFICIAL CAPACITY UNDER THE FOURTEENTH AMENDMENT**

Count II is identical to Count I, and Count IV is identical to Count III, except that Counts II and IV are asserted against Folmar in his official, rather than his individual, capacity.

Folmar thus has also been sued in his official capacity as Administrator of the Board. Actions against individual officials sued in their official capacity are deemed actions against the State. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, such claims for damages are barred by the Eleventh Amendment of the United States Constitution from being heard in federal courts.

Congress has never abrogated Eleventh Amendment immunity in 42 U.S.C. § 1983 lawsuits, and the State of Alabama has never waived such immunity. *See Carr v. City of Florence*, 916 F.2d 1521 (11th Cir. 1990); *Cross v. Alabama*, 49 F.3d 1490 (11th Cir. 1995).

In addition, the action against Folmar in his official capacity is precluded by the settled principle that neither a State nor its officials acting in their official capacities are "persons" subject to suit under § 1983. *Will*, 491 U.S. at 71. The only circumstance in which

the § 1983 claim may be alleged against Defendant Folmar in his official capacity is for the limited purpose of implementing injunctive relief. *Id.* at 71 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' *Kentucky v. Graham*, 473 U.S., at 167, n. 14, 105 S. Ct., at 3106, n. 14; *Ex parte Young*, 209 U.S. 123, 159-160, 28 S. Ct. 441, 453-454, 52 L. Ed. 714 (1908). ").

## C.     EEOC CHARGE AND RIGHT-TO-SUE LETTER

As a statutory precondition to instituting a Title VII action in district court, a private plaintiff must file an Equal Employment Opportunity Commission (EEOC) complaint against the alleged discriminating party and receive and act upon a statutory notice from the EEOC of his or her right to sue the respondent or respondents named in the charge. *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562 (11th Cir. 1996); *Malone v. K-Mart Corp.*, 51 F. Supp. 2d 1287 (M.D. Ala. 1999). Byrne's Second Amended Complaint is deficient in that it is silent on the subject of either having filed a charge of discrimination or having received a right-to-sue letter from the EEOC. The vague assertion that "all conditions precedent" (Second Am. Compl. ¶ 38) have been fulfilled for the action, is not sufficient to establish that the court should entertain Byrne's Title VII claims.

## D.     COUNT V—TANGIBLE EMPLOYMENT ACTION SEX DISCRIMINATION UNDER TITLE VII AGAINST THE BOARD

To establish a discrimination in discipline, an employee must show that (1) he (she) belongs to a protected class under Title VII, (2) he (she) was qualified for the job, and (3) a

15

similarly situated employee engaged in the same or similar misconduct but did not receive similar discipline. *Nicholas v. Bd. of Trs. of Univ. of Ala.*, 2007 WL 3023209 (11th Cir. 2007).

In order to establish that she suffered a tangible employment action, as required for a Title VII claim, an employee must demonstrate a serious and material change in the terms, conditions, or privileges of employment. *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192 (11th Cir. 2004). Not all conduct taken by an employer which causes a negative effect on an employee constitutes an adverse employment action, for purposes of a Title VII claim; there must be some threshold level of substantiality that must be met for unlawful discrimination to be cognizable. *Sasser v. Ala. Dep't of Corr.*, 373 F. Supp. 2d 1276 (M.D. Ala. 2005). In a manner similar to the deficiency in Byrne's § 1983 claims, due to her not having experienced a substantial adverse employment action, Byrne's claims under Count V are fatally deficient for the lack of an actionable employment action by her employer.

There is ample precedent in the Eleventh Circuit and the Middle District of Alabama in which the courts have found no Title VII claim on the basis of the kinds of "wrongs" very much like those asserted by Byrne in this case. Here, Byrne has alleged only the loss of a leadership position and related appointments (Second Am. Compl. ¶ 97), not a loss of her job title, compensation, or benefits.

Relevant decisions are grounded in the same essential principle which applies here —that Title VII is not designed to make federal courts sit as a super-personnel department

that reexamines an entity's business decisions. *Taylor v. CSX Transp.*, 418 F. Supp. 2d 1284 (M.D. Ala. 2006); *see Nettles v. LSG Sky Chefs*, 2006 WL 3345290 (11th Cir. 2006) (unpublished) (evidence that employer undermined African-American employee's authority, excluded him from business meeting, denied him administrative support, evaluated him as meeting expectations instead of exceeding expectations, and offered him a vice-president position on less favorable terms than those offered to other vice presidents, was insufficient to establish that he suffered an "adverse employment action," as required to make out a prima facie case of race discrimination or retaliation); *Osahar v. Postmaster Gen. of U.S. Postal Serv.*, 2008 WL 123959 (11th Cir. 2008) (unpublished) (African-American federal employee did not suffer adverse employment action in connection with job assignments and training and overtime opportunities, as required to establish prima facie Title VII race discrimination claim; employee was never suspended, he did not suffer any reduction in wages, job title, seniority status, or any other employment benefits); *Butler v. Ala. Dep't of Transp.*, 512 F. Supp. 2d 1209 (M.D. Ala. 2007) (reprimands of public employee and letters of written counsel that did not lead to tangible harm in the form of a loss of pay or benefits or lost opportunity for a job promotion were not adverse employment actions for purposes of Title VII prima facie case); *Anderson v. United Parcel Serv., Inc.*, 2007 WL 2669706 (11th Cir. 2007) (employees did not suffer any adverse employment action regarding low-quality performance review (QPR) scores, thus defeating their Title VII race discrimination claims; there was no evidence that the poor performance evaluations by themselves qualified as

17

adverse employment actions, or that the evaluations were, in any direct way, connected to a denial of lateral transfers, promotions, or pay raises).

Another of the elements for a prima facie case which is clearly lacking here is the existence of one or more similarly situated male employees who were treated more favorably than Byrne by the Board. Byrne has not alleged the existence of any such male employee in Count V. A male employee of the Board, Andy Knight, who formerly was subordinate to Byrne, is mentioned elsewhere by Byrne (Second Am. Compl. ¶¶ 14-17, 24, 34, 35), but not as a comparator employee, and, in any event, it is clear that Knight was not similarly situated to Byrne.

In order for a female Title VII plaintiff to show sex discrimination when good reasons exist for an adverse employment action (even assuming, as is not the case here, that there was an adverse employment action), a plaintiff must show that male employees with employment histories like hers were not subject to the same adverse employment action as the plaintiff. *Rojas v. Florida*, 285 F.3d 1339 (11th Cir. 2002); *Williams v. Motorola, Inc.*, 303 F.3d 1284 (11th Cir. 2002) (female employee failed to establish a prima facie case of disparate treatment under Title VII with respect to job assignments, performance appraisals, and pay promotion where employee failed to present any evidence that she was performing satisfactorily or treated any differently from males who were insubordinate and had difficulty getting along with co-workers); *Swanson v. Civil Air Patrol*, 37 F. Supp. 2d 1312 (M.D. Ala. 1998) (former employee claiming disparate treatment on basis of sex in violation of Title VII failed

to prove a prima facie case of disparate treatment through diminution of her job responsibilities, absent allegation that alleged diminution occurred because of her membership in a protected group or that a similarly situated male was not relieved of job responsibilities; employee's claim of disparate treatment on basis of sex based on allegations that certain male employees would not make eye contact with her, did not like to speak with her, and yelled at her once during a meeting did not establish a prima facie case of discrimination, absent showing that incidents rose to level of adverse employment action or were based on her membership in a protected class).

In addition, bare statistical evidence is irrelevant to the establishment of an individual disparate-treatment claim, so that the allegation that, after the actions Byrne complains of, there being no female division chiefs (Second Am. Compl. ¶¶ 98, 104), is of no consequence legally. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004) (statistical evidence that employer had only two female vice presidents during a certain period of time was not relevant in establishing female employee's prima facie Title VII failure-to-promote claim; claim was based on individual disparate treatment, and there was no evidence as to the number of other women who expressed interest in the vice-president positions; *see also Burney v. Rheem Mfg. Co.*, 196 F.R.D. 659 (M.D. Ala. 2000) (statistical evidence of disparity in management in favor of males was not sufficiently probative to establish prima facie case of discrimination in promotions in female employee's individual disparate treatment case

19

under Title VII, absent showing that evidence was based on comparison of similarly situated individuals).

**E.    COUNT VI—HOSTILE WORK ENVIRONMENT SEX DISCRIMINATION UNDER TITLE VII AGAINST THE BOARD**

Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232 (11th Cir. 2001). Although the Board adamantly denies that Byrne was treated unreasonably in any respect, Title VII does not protect against harsh treatment at the workplace. *Grant v. Bullock County Bd. of Educ.*, 895 F. Supp. 1506 (M.D. Ala. 1995).

To establish sexual harassment under Title VII, an employee must prove all of the following elements:  (1) she belongs to a protected group; (2) she has been subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable exists. *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227 (11th Cir. 2006); *Pate v. West Publ'g Corp.*, 416 F. Supp. 2d 1275 (M.D. Ala. 2006). Here, the Board submits that there was no harassment or hostile workplace atmosphere, and that whatever Byrne may have experienced as hostile conduct was neither based on her gender nor sufficiently severe or pervasive to constitute an actionable hostile environment. Byrne's allegations in Count VI concerning various actions which cannot be characterized as more

than slights and inconveniences, at best (Second Am. Compl. ¶ 103), fall far short of what is needed to show a hostile work environment.

     For an atmosphere of sexual harassment or hostility to be actionable under Title VII, the offending behavior must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Pa. State Police v. Suders*, 542 U.S. 129, 124 S. Ct. 2342 (2004). Factors in whether the workplace environment is sufficiently hostile or abusive to support a sexual harassment claim under Title VII include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508 (2001); *see Agee v. Potter*, 2007 WL 332220 (11th Cir. 2007) (unpublished) (events underlying postal worker's sexual-harassment claim, which included supervisor shouting at worker in "dehumanizing" manner, supervisor speaking to worker in "elevated voice," supervisor failing to intervene when worker was "assaulted" by another female employee, and supervisor threatening to "take care of" worker, were not, on their face, sexual in nature and were not sufficiently severe or pervasive to alter terms and conditions of worker's employment, and thus were not actionable as hostile work environment claim).

     Title VII does not prohibit harassment alone, however severe and pervasive; instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex; in addition, because a claim of sexual harassment under Title

VII is a claim of disparate treatment, in order to prevail a plaintiff must show that similarly situated persons not of her sex were treated differently and better. *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287 (11th Cir. 2007); *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999) (to establish that harm alleged was based on her sex, sexual harassment plaintiff must show that but for the fact of her sex, she would not have been the object of harassment); *see also Nettles v. LSG Sky Chefs*, 2006 WL 3345290 (11th Cir. 2006) (allegations that supervisor harassed African-American employee by undermining him, disagreeing with him, denying him training, and unfavorably comparing minority staff members with nonminority staff members were insufficient to make out a prima facie case of harassment, absent evidence that these actions were motivated by race).

Byrne's allegations of such complained of conduct as failure to lend support to her, changes in personnel, restrictions on use of the phones and receiving employment related mail, changes in job duties, reprimands, and loss of supplies or equipment (Second Am. Compl. ¶ 103), even if assumed to be true, simply do not add up to a hostile work atmosphere. Adding a conclusory allegation that such treatment was due to Byrne's gender (Second Am. Compl. ¶ 101) does nothing to salvage the claim.

## F.    COUNT VII—TANGIBLE EMPLOYMENT ACTION RETALIATION UNDER TITLE VII AGAINST THE BOARD

To make out a prima facie case of retaliation in violation of Title VII, the plaintiff must show all of the following:  (1) that she engaged in statutorily protected expression; (2) that she suffered adverse employment action; and (3) that the adverse action was causally

22

related to the protected expression. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955 (11th Cir. 2008); *Dale v. Wynne*, 497 F. Supp. 2d 1337 (M.D. Ala. 2007) (same elements for retaliation claim under Rehabilitation Act). The Board submits that Byrne has failed to allege any of the elements of this cause of action.

For purposes of analyzing a retaliation claim under Title VII, the court must assess: (1) the nature of the complaint; (2) the date(s) upon which it was made; (3) the persons to whom it was made; (4) the persons who knew, or should have known, about the complaint; (5) the adverse action taken against the employee; (6) the date of the adverse action; and (7) the circumstances which indicate, or at least suggest, that the action was taken because of the complaint. *Cannon v. Dyncorp.*, 462 F. Supp. 2d 1190 (M.D. Ala. 2005) (African-American female former union employee, who was terminated on basis that she was absent without prior approval due to effects of illegal drug use, did not show that employer retaliated against her, in violation of Title VII, for formally and informally complaining of discrimination, through her testimony that she "openly spoke out against the discriminatory treatment that she was subjected to, up until [sic] and including the day she was fired." ).

Regarding the requirement that the plaintiff has engaged in protected activity, the activity is protected only if it was objectively reasonable for the plaintiff employee to believe that the actions complained about constituted prohibited discrimination in employment. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 121 S. Ct. 1508 (2001) (no reasonable person could have believed that Title VII sex-discrimination provision was implicated by

23

single incident during school district's review of job applicants' profiles, in which male supervisor, in presence of one male and one female employee who were also participating in review, read aloud sexually explicit statement attributed to one applicant, stated that he did not know what it meant, and was told by male employee, "I'll tell you later," at which both men laughed; thus, incident did not support female employee's Title VII retaliation claim alleging that adverse actions followed her internal complaints about exchange); *Adams v. Cobb County Sch. Dist.*, 2007 WL 1720430 (11th Cir. 2007) (unpublished) (employee's complaining to school principal that he was being discriminated against because of his race and retaliated against because of his prior Equal Employment Opportunity Commission (EEOC) charge and sending a letter to school officials, stating they should "do the right thing and recommend" that he be promoted to principal, did not amount to statutorily protected activity under Title VII, because it was not objectively reasonable for employee to have believed that district was unlawfully discriminating against him); *Brown v. City of Opelika*, 2006 WL 3690693 (11th Cir. 2006) (termination of city employee was not in retaliation for protected activity, as required to establish prima facie case under Title VII, absent showings that employee voiced complaint of unlawful discrimination or harassment on basis of race and that she could have possessed objectively reasonable belief that supervisor, whom employee admitted did not make any racially derogatory comments, was treating her differently than white employee in expressing his anger); *Gaddis v. Russell Corp.*, 242 F. Supp. 2d 1123 (M.D. Ala. 2003) (an employee in a retaliation claim under Title VII must not

only show that he subjectively believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented; it thus is not enough for an employee to allege that his belief in this regard was honest and bona fide, but rather, the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable).

In this case, whatever Byrne may have believed subjectively, Byrne could not have had an objectively reasonable belief that the actions of the Board constituted prohibited gender discrimination.  In this regard, the Board's arguments against Count V of Byrne's Second Amended Complaint, alleging tangible employment discrimination based on gender, are fully incorporated here by reference.  Accordingly, Byrne cannot show that she engaged in protected activity in any of her actions, including her having inquired about filing a gender discrimination grievance with the Board's personnel office.  (Second Am. Compl. ¶ 107.)

In a manner similar to a claim of sex discrimination, a retaliation claim has a materiality requirement and an objective standard; thus, the plaintiff must show that a reasonable employee would have found the employer's challenged action materially adverse, that is, that the challenged action could well dissuade a reasonable employee from engaging in the protected conduct.  *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006); *Drakeford v. Ala. Coop. Extension Sys.*, 416 F. Supp. 2d 1286 (M.D. Ala. 2006).  Thus, for example, a university employee did not suffer an "adverse employment action," as retaliation for her complaints about pay inequalities, in the form of a new job

description in a survey; such action was not a "demotion" because she remained in her position, and criticisms of her job performance and various other matters about which the plaintiff complained were no more than ordinary tribulations of the workplace and petty slights. *Byrd v. Auburn Univ. Montgomery*, 2008 WL 624025 (11th Cir. 2008). To the same effect are *Edmondson v. Bd. of Trs. of Univ. of Ala.*, 2007 WL 4234549 (11th Cir. 2007) (black female associate professor's removal from diversity committee did not qualify as an adverse employment action, as required for employee's retaliation claim under Title VII), and *Portera v. Ala. Dep't of Fin.*, 322 F. Supp. 2d 1285 (M.D. Ala. 2004) (supervisor's conduct towards security systems analyst employed by state finance department did not constitute retaliation in violation of Title VII for her sending a complaint letter to personnel director; necessary severity was missing, when only alleged conduct was threat to fire analyst, expression of anger including pounding of fist on desk, and removal of her from contact with new gubernatorial administration), *aff'd without published opinion*, 133 F. App'x 739 (11th Cir. 2005).

For the same reasons, discussed *supra*, requiring a finding that the Board's actions did not constitute an adverse employment action against Byrne under § 1983 or Title VII's prohibition against gender discrimination, Byrne has failed to allege such materially adverse actions as are necessary for a retaliation claim against the Board. As in the above-referenced claims, Byrne has alleged only that she was removed from a leadership position and from related committees and positions. (Second Am. Compl. ¶ 108.)

The causation element for a retaliation claim entails consideration of the proximity in time, or lack thereof, between the plaintiff's allegedly protected conduct and the allegedly retaliatory employment action by the employer; too large a gap in time between the two events, such as a period of months, will weigh heavily against the retaliation claim, for lack of causation. *See Mathis v. Leggett & Platt*, 2008 WL 124512 (11th Cir. 2008) (unpublished) (employee's protected activity in complaining about sexual harassment by his supervisor was too remote from his firing five months later for violating attendance policy to support inference of causation, as required for retaliation claim under Title VII); *Penn v. Dep't of Corr.*, 411 F. Supp. 2d 1326 (M.D. Ala. 2005) (seven-month interval between state correctional officer's filing of discrimination charge with EEOC and misconduct discipline of officer was too long to permit inference of causation required to support officer's retaliation claim under Title VII and Age Discrimination in Employment Act (ADEA), absent additional evidence of retaliatory intent).

In Byrne's case, she alleges protected conduct in the form of an attempt to file a grievance complaint in November 2005. (Second Am. Compl. ¶ 18.) The primary alleged retaliatory action by the employer, and the only one with a specific date, is her removal from the Responsible Vendor Program and the transfer of that program to the Enforcement Division six months later, in May 2006. (Second Am. Compl. ¶ 20.) The passage of six months undermines the causation requirement for the retaliation claim, just as the five-month

and seven-month periods did in *Mathis* and *Penn*, respectively, especially given the absence of any additional allegations showing retaliatory intent.

## G.  COUNT VIII—HOSTILE WORK ENVIRONMENT RETALIATION UNDER TITLE VII AGAINST THE BOARD

To establish a hostile-work-environment claim based on retaliation, an employee must show (1) he participated in protected activity, (2) the employer committed some adverse employment action, (3) there is a causal link between the protected activity and the adverse action, (4) assuming that the adverse action is not an ultimate employment decision, there was a serious and material change in the terms, conditions or privileges of his employment, and (5) imposition of liability on the defendant employer is appropriate. *Collier v. City of Opelika*, 374 F. Supp. 2d 1098 (M.D. Ala. 2004) (African-American firefighter was not subjected to racially or retaliatory hostile work environment, under the totality of circumstances; firefighter relied on evidence that assistant fire chief singled him out for surveillance and later threatened him with his car, but they were on different shifts and firefighter had not worked for assistant fire chief in more than five years and was not evaluated by him, firefighter's salary and shift had not changed nor had he received any unfavorable assignments as result of cited incidents).

For this claim, the Board incorporates here its arguments set forth *supra*, showing the absence of protected activity, adverse employment action, causation, and a sufficiently serious and material change in the terms, conditions, or privileges of Byrne's employment.

28

With regard to the fourth element, in particular, in establishing a retaliatory hostile work environment, the conduct must be "extreme" to amount to a change in the terms and conditions of employment; conduct is not sufficiently hostile and pervasive merely because the employee believes it to be so, and instead, the work environment must be both objectively and subjectively offensive, and one that a reasonable person would find hostile or abusive, and that the victim in fact did perceive to be so.  *Id*. at 1101; *Portera v. Winn Dixie of Montgomery, Inc*., 996 F. Supp. 1418 (M.D. Ala. 1998) (former employee who voluntarily quit based on her allegations that manager isolated her, she was ignored by other employees due to her complaint of sexual harassment, and she considered working atmosphere to be cold, failed to show that she suffered adverse employment action required to show prima facie case of Title VII retaliation).   Byrne's allegations of such things as failure to communicate, not being included in meetings, receiving less staffing, money and technical support than Byrne would have preferred, reprimands and the like (Second Am. Compl. ¶¶ 114, 115) fall far short of alleging an actionable retaliatory hostile environment at her workplace.

## <u>CONCLUSION</u>

The Court should dismiss this action against Defendants Alabama Alcoholic Beverage Control Board and Emory Folmar in its entirety, due to the failure of Plaintiff Jan Byrne to state a claim upon which relief can be granted.

Respectfully submitted this 17th day of April, 2008.


s/Joseph W. Adams                              s/Robert A. Huffaker
Joseph W. Adams                                Robert A. Huffaker
Post Office Box 1487                           Rushton,  Stakely, Johnston
Ozark, Alabama 36361                             & Garrett, P.A.
Tel:  (334) 774-5533                           Post Office Box 270
Fax: (334) 774-1252                            Montgomery, Alabama  36101-0270
E-Mail: Joeadamslaw@aol.com                    Tel:  (334) 206-3215
Bar Number:  ASB-3743-A34J                     Fax: (334) 481-0814
                                               E-Mail: rah@rsjg.com
                                               Bar Number:  ASB-7668-U79R

                                               Attorneys for Defendants Alabama
                                               Alcoholic Beverage Control Board
                                               and Emory Folmar

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of April, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record and I hereby certify that I have mailed, by United States Postal Service, the foregoing document to the following:

        Jay Lewis
        Fred Clements
        Law Offices of Jay Lewis, LLC
        Post Office Box 5059
        Montgomery, Alabama 36103


                          s/Robert A. Huffaker
                          Of Counsel

30