IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAN BYRNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 2:06-CV-1084-WKW |
| v. | ) | (WO) |
| | ) | |
| ALABAMA ALCOHOLIC BEVERAGE | ) | |
| CONTROL BOARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants Alabama Alcoholic Beverage Control Board ("Board") and Emory Folmar's ("Folmar") Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted (Doc. # 25), seeking dismissal of all claims in this civil rights and employment discrimination lawsuit. The motion is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and is accompanied by a brief (Doc. # 26). Ms. Byrne filed a Response (Doc. # 31), to which Defendants filed a Reply (Doc. # 32). After careful consideration of the arguments of counsel and the applicable law, the court finds that the motion to dismiss is due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for all claims arising under federal law. The court also has original jurisdiction over claims based

upon violations of civil rights.  <u>See</u> 28 U.S.C. § 1343.  The parties do not contest personal jurisdiction or venue, and the court finds that there are allegations sufficient to support both.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007).  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 1964-65 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)); *see also Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (stating that the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff).

## III.  BACKGROUND

For purposes of resolving the motion to dismiss, the court accepts as true the facts alleged in the Second Amended Complaint.  (2d Am. Compl. (Doc. # 21).)  Those facts are as follows.

The Board is an agency of the State of Alabama.  (*Id.* ¶ 4.)  Ms. Byrne, who has been employed by the Board since 1991, works as the Responsible Vendor Program Alcohol Awareness Coordinator.  (*Id.* ¶¶ 8-9.)  In this position as a division chief, Ms. Byrne has been

instrumental on both the state and national level in formulating alcohol and tobacco policies. (*Id.* ¶¶ 9, 11.)  Considered "an expert in retail and youth abuse prevention," she helped the Board receive "several national awards."  (*Id.* ¶ 11.)  Ms. Byrne, along with seven other division chiefs, "works under the immediate supervision of [Mr.] Folmar."  (*Id.* ¶ 10.)  Mr. Folmar is the administrator of the Board.  (*Id.*)

As the Responsible Vendor Program Alcohol Awareness Coordinator, Ms. Byrne originally occupied a supervisory position.  One of her subordinates was Andy Knight ("Mr. Knight").  (*Id.* ¶ 14.)  Mr. Knight is "substantially younger" than 59-year-old Ms. Byrne.  (*Id.* ¶¶ 12, 14.)  Mr. Knight, who did not agree with Ms. Byrne's management style, filed two grievances against Ms. Byrne with the Board.  (*Id.* ¶ 15.)  The Board's investigation into the first grievance "showed no grounds for [Mr. Knight's] complaint."  (*Id.*)  When Mr. Knight filed the second grievance, Mr. Folmar "refused to support" Ms. Byrne and "counseled her" for failing to "get[] along" with her subordinates, notwithstanding that the investigation revealed that Ms. Byrne "had done nothing wrong."  (*Id.* ¶ 16.)  Mr. Folmar also told Mr. Knight to report directly to him if he had any complaints concerning Ms. Byrne's supervision, thereby "undermining [Ms.] Byrne's authority . . . ."  (*Id.*)  Mr. Folmar "ultimately removed [Mr.] Knight from [Ms.] Byrne's supervision."  (*Id.* ¶ 17.)

Believing that Mr. Folmar had discriminated against her because of her gender, Ms. Byrne tried to file a complaint against him on November 14, 2005.  The acting personnel director, however, told Ms. Byrne that Mr. Folmar "was outside the Merit System" and, thus,

could not be the subject of a grievance. (*Id.* ¶ 18.) After Ms. Byrne's failed attempt to file a grievance against Mr. Folmar, Mr. Folmar "refuse[d] to communicate with her," "to include her in agency-level conferences and decision-making processes," and to provide technical support for her division. (*Id.* ¶ 19.) He also "denied her requests to attend national meetings," as well as "her staffing and budget requests." (*Id.*) He began to "ostracize[]" her. (*Id.* ¶ 19.) For example, once in a public meeting, Mr. Folmar announced that Ms. Byrne was "out of control" and "incapable of managing and supervising a division." (*Id.* ¶ 28.)

Ultimately, in May 2006, Mr. Folmar transferred the Responsible Vendor Program to the enforcement division and renamed Ms. Byrne's division a bureau. (*Id.* ¶¶ 20, 30.) At the same time, he divested Ms. Byrne of all of her supervisory responsibilities. While her job title has not changed, Ms. Byrne no longer supervises any employees, when previously she had supervised nine. (*Id.* ¶¶ 21, 24.) Mr. Folmar also no longer allows her to participate on task forces or to attend conferences, (*id.* ¶ 22), and he relegated her job to "clerical duties," (*id.* ¶ 25.) At internal staff meetings, she is required to sit with the "clerical staff," rather than with the "professional staff," and is "dismissed with the clerical staff," while "the professional staff remains to conduct business." (*Id.* ¶ 30.)

Moreover, Mr. Folmar now requires Ms. Byrne to report directly to Mr. Knight and to Vance Patton ("Mr. Patton"), the assistant director of enforcement, who like Mr. Knight is "substantially younger" than Ms. Byrne. (*Id.* ¶ 24.) During internal staff meetings, Mr. Patton has commented on "how much better things are now" that he oversees Ms. Byrne's

former division.  (*Id.* ¶ 30.)  Mr. Patton also directed Ms. Byrne's former employees not to communicate with her.  (*Id.* ¶ 31.)  Both Mr. Patton and Mr. Knight have communicated to state and national researchers and program participants that Ms. Byrne has been "removed from her position."  (*Id.* ¶ 34.)

Seeking redress for alleged discrimination from the Board and Mr. Folmar, Ms. Byrne commenced this lawsuit on December 6, 2006.  The original complaint has been amended twice (Docs. # 11 & 21), the second time in response to the court's Order to comply with Rule 10(b) of the Federal Rules of Civil Procedure, to clarify the capacity in which Ms. Byrne is suing Mr. Folmar, and to remedy shotgun allegations.  (Doc. # 19.)

The Second Amended Complaint (Doc. # 21), which is the operative complaint, contains eight counts.  In those eight counts, Ms. Byrne contends that, during her employment, she has been subjected to unlawful employment discrimination by reason of her gender and age and also has endured retaliation for opposing discrimination in the workplace. She alleges further that she has been denied procedural due process.  She predicates liability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and the Due Process Clause of the Fourteenth Amendment, as enforced by 42 U.S.C. § 1983.

## IV. DISCUSSION

Defendants move for dismissal of the eight counts in the Second Amended Complaint. The court will address the arguments in turn.

### A. 42 U.S.C. § 1983 Fourteenth Amendment Claims: Counts One, Two, Three and Four

Counts One, Two, Three and Four are captioned "Fourteenth Amendment" claims. (2d Am. Compl. at 7, 9, 11, 13.) They are brought against Mr. Folmar pursuant to 42 U.S.C. § 1983. (*Id.* ¶¶ 41, 54, 67, 81.) Counts One and Three are individual-capacity claims, while Counts Two and Four are official-capacity claims. Mr. Folmar seeks dismissal of Counts One and Three based upon absolute legislative immunity or, alternatively, qualified immunity. As to Counts Two and Four, Mr. Folmar raises Eleventh Amendment immunity as a defense to any damages claims. (Doc. # 26 at 3-14.)

### 1. Abandoned Claims

Before delving into a discussion on the immunity issues, it is helpful first to clarify which Fourteenth Amendment claims Ms. Byrne concedes are not at issue. Counts One, Two, Three and Four contain allegations which arguably could be construed as Fourteenth Amendment claims alleging (1) a protected liberty interest under the Due Process Clause and (2) gender and age discrimination in violation of the Equal Protection Clause. (2d Am. Compl. at 7-15.) In response to Mr. Folmar's arguments interposing qualified immunity as a defense to these due process and equal protection claims, however, Ms. Byrne states that the Second Amended Complaint does not allege the deprivation of a liberty interest under

6

the Due Process Clause or intentional gender or age discrimination under the Equal Protection Clause. (Doc. # 31 at 4-5.)

While it is not as clear to the court as it is to Ms. Byrne that these claims are absent from the Second Amended Complaint, it is clear that Ms. Byrne is not pursuing these claims against Mr. Folmar in either his individual capacity or official capacity; thus, to the extent that Fourteenth Amendment claims alleging a deprivation of a protected liberty interest and a violation of equal protection are included in the Second Amended Complaint, the court finds that they are abandoned. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"). To streamline the claims in the Second Amended Complaint which are at issue, the court finds that Mr. Folmar's motion to dismiss is due to be granted as to any § 1983 Fourteenth Amendment claims in Counts One, Two, Three and Four pertaining to a deprivation of liberty and intentional gender and age discrimination in violation of the Equal Protection Clause. Accordingly, Ms. Byrne proceeds only on her § 1983 Fourteenth Amendment claim against Mr. Folmar in his individual and official capacities, alleging that she was deprived of a property interest without procedural due process.

## 2. *Individual-Capacity Claims*

### a. Absolute Legislative Immunity

As to Ms. Byrne's remaining § 1983 Fourteenth Amendment claim, alleging the deprivation of a property interest without procedural due process, Mr. Folmar argues that, in his individual capacity, he is entitled to absolute legislative immunity. It is undisputed that Mr. Folmar, as the administrator of the Board, did not occupy a legislative office. The parties agree, though, that it is not the title of the office, but, rather, "the nature of the act which determines whether legislative immunity shields the individual from suit." *Yeldell v. Cooper Green Hosp.*, 956 F.2d 1056, 1062 (11th Cir. 1992). Moreover, "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity,'" regardless of "the motive or intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998).

Mr. Folmar argues that, in his individual capacity, he is entitled to absolute immunity for damages arising out of the performance of his legitimate legislative activities. Specifically, citing paragraphs 20, 21, 22, 24 and 30 of the Second Amended Complaint and assuming, as he must, the truth of those allegations, Mr. Folmar says that he was acting in a legislative capacity when he took away Ms. Byrne's supervisory responsibilities, prohibited her from serving on various committees, and transferred the Responsible Vendor Program to a different division. (Doc. # 26 at 9.) As support for his position, Mr. Folmar relies principally on *Bogan*. (*Id.*) Ms. Byrne, on the other hand, argues that Mr. Folmar's actions against her were "administrative in nature," not legislative. (Doc. # 31 at 2.) She says that

8

*Bogan* is "highly distinguishable" from the facts of this case. (*Id.*) The issue, thus, is whether Mr. Folmar's actions about which Ms. Byrne complains are considered legislative or administrative. *See, e.g., Kamplain v. Curry County Bd. of Commrs.*, 159 F.3d 1248, 1251 (10th Cir. 1998) (a post-*Bogan* case recognizing the distinction between legislative and administrative acts for purposes of absolute legislative immunity).

In *Bogan*, the mayor proposed multiple budget cuts in anticipation of a reduction in state aid. 523 U.S. at 47. Those cuts included the elimination of a city department of which the plaintiff was the sole employee. The city council approved, and the mayor signed into law, an ordinance eliminating the city department. *Id.* The plaintiff responded by filing a § 1983 action, alleging that the elimination of her position was motivated by racial animus and retaliatory motives because she had filed a complaint against a co-worker. *Id.* In response, the mayor and council member raised the defense of absolute legislative immunity. On appeal, the First Circuit held that the challenged conduct was administrative, not legislative. *See id.* The Supreme Court reversed.

The Supreme Court ruled that the mayor and council member were entitled to legislative immunity. The council member's "acts of voting for an ordinance were, in form, quintessentially legislative." *Id.* at 55. Likewise, the mayor's "introduction of a budget and signing into law an ordinance also were formally legislative, even though he was an executive official." *Id.* The mayor's "actions were legislative because they were integral steps in the legislative process." *Id.* Also, looking beyond the formal actions of the mayor and the council member, the Supreme Court observed that the ordinance itself "bore all the

9

hallmarks of traditional legislation," as it "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* at 55-56. The Supreme Court also distinguished the facts from a decision to hire or fire an individual employee, explaining that a decision to eliminate a position in a budget "may have prospective implications that reach well beyond the particular occupant of the office." *Id.* at 55; *see also Wright v. Montgomery County*, 215 F.3d 367, 377 (3d Cir. 2000) ("Firing a particular employee is a personnel decision that does not involve general policy making.").

The court finds that the facts in the Second Amended Complaint are distinguishable from the facts in *Bogan* on at least three grounds. First, there are no allegations in the Second Amended Complaint suggesting that the alteration of Ms. Byrne's job duties and the transfer of her program to a different division were taken because of "budgetary priorities of the [Board]" or other financial reasons. *Bogan*, 523 U.S. at 55. The court, thus, is not persuaded by Mr. Folmar's position that the actions taken by him were "budgetary decisions." (Doc. # 26 at 4.) In fact, this statement is contradicted by Mr. Folmar's contentions in other sections of his brief which specifically focus on the absence of an allegation in the Second Amended Complaint that Ms. Byrne suffered an economic loss in either "pay or benefits as a result of the alleged actions of [Mr.] Folmar." (*Id.* at 13.)

Second, in *Bogan*, the city officials made a legislative decision to eliminate an entire department which resulted in the eradication of the plaintiff's position. Here, though, Mr. Folmar's decision did not "involve[] the termination of a position." *Bogan*, 523 U.S. at 56.

10

Ms. Byrne's position was not abolished. To the contrary, she "still holds" her job title. (2d Am. Compl ¶ 24.) Rather, her primary complaint is that Mr. Folmar left her in her position, but stripped her of all her supervisory responsibilities and assigned those duties to two other existing male employees to whom Ms. Byrne now reports. (*Id.* ¶¶ 24, 30.) According to the Ms. Bryne's pleading, Mr. Folmar specifically targeted her and implemented personnel changes which detrimentally affected only her job role. It is difficult for the court to envision on the present facts how the decision to divest Ms. Byrne of her supervisory duties is "'an integral part of the deliberative and communicative processes' by which legislators pass laws." *Yeldell*, 956 F.2d at 1062. Mr. Folmar's personnel decision appears to be much like those employment decisions regarding hiring and firing which have been found by the Eleventh Circuit to fall outside the scope of legislative immunity. *Id.* Third, there are no allegations that the elimination of Ms. Byrne's job duties and the transfer of her program to a different division were effectuated by a vote, ordinance or other procedure bearing "the hallmarks of traditional legislation." *Bogan*, 523 U.S. at 55.

Under the facts of the Second Amended Complaint, the court finds that Mr. Folmar's actions more closely resemble administrative decisions pertaining to employment matters, rather than legislative acts. Since there are insufficient facts in the Second Amended Complaint from which the court can find that Mr. Folmar was involved in a legislative action, the court finds that Mr. Folmar is not entitled to dismissal on the basis of legislative immunity.

b.  Qualified Immunity

As an alternative to absolute legislative immunity, Mr. Folmar contends he is entitled to qualified immunity.  Qualified immunity may protect government officials performing discretionary functions from being sued in their individual capacities. *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997).  It shields government actors from liability to the extent "their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

The qualified immunity defense involves a two-step inquiry.  The first step, which concerns whether the government official was engaged in a "discretionary function," *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997), is not in contention, (Doc. # 26 at 5; Doc. # 31 at 3).  The court, thus, proceeds directly to the second inquiry.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.  This second inquiry is itself a two-part test.  First, the court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [the government official's] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S.

194, 201 (2001).  If so, the "next, sequential step is to ask whether the right was clearly established."  *Id.*  This inquiry focuses on whether the "state of the law" at the time of the alleged violation provided the government officials with "fair warning that their alleged treatment of [the plaintiff] was unconstitutional."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Ms. Byrne is pursuing a § 1983 claim predicated on the deprivation of a property interest without procedural due process, in violation of the Fourteenth Amendment.  (Doc. # 31 at 3-4.)  The claim is twofold.  First, Ms. Byrne says that she had a property right in her job and the "freedom to perform her job" and that she was divested of all her essential job functions without any process and "a chance to be heard."  (2nd Am. Compl. ¶¶ 41, 43, 54, 56, 67, 69, 81, 83; Doc. # 31 at 3-4.)  Second, Ms. Byrne alleges that she was denied procedural due process when she attempted to file a complaint of gender discrimination against Mr. Folmar with the Board's personnel office, but was told that she could not file a complaint against him because he was not a merit system employee.  (Doc. # 31 at 4, citing 2d Am. Compl. ¶¶ 112-13.)  Mr. Folmar does not address the second claim and, thus, neither will the court.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of . . . 'property' interests within the meaning of the . . . Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  Analysis of procedural due process claims requires a dual inquiry:  "Did the plaintiff have a property interest of which he was deprived by state action?  If so, did the plaintiff receive sufficient process regarding that deprivation?"  *Ross v. Clayton County, Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999).

13

Focusing on the first *Ross* inquiry, Mr. Folmar argues that, at best, Ms. Bryne only has a protected property interest in the economic benefits of her position, not in the duties which she performs, and that, absent an allegation by Ms. Byrne "that she suffered any loss of pay or benefits as a result of the alleged actions of [Mr.] Folmar," (Doc. # 26 at 7), she fails to allege the violation of a Fourteenth Amendment procedural due process right. In support of his argument, Mr. Folmar relies on *Harris v. Board of Education*, 105 F.3d 591 (11th Cir. 1997). For the reasons to follow, the court agrees with Mr. Folmar.

In *Harris*, the facts established that, during the middle of the plaintiff's four-year contract as superintendent, the school board relieved the plaintiff of his duties, but agreed to pay the plaintiff his salary and other benefits for the duration of the contract. *Id.* at 593-94. The plaintiff brought a § 1983 action against the school board and its members, alleging that he had been deprived of his property interest in his job as superintendent without procedural due process. *Id.* at 594. As to the § 1983 individual-capacity claims, the board members argued that they were entitled to qualified immunity. The Eleventh Circuit agreed. "[A] public official has a constitutionally protected property interest only in the economic benefits of his position and does not have any right to actually hold the position and execute the duties of the office." *Id.* at 596-97; *see also Holloway v. Reeves*, 277 F.3d 1035, 1040 (8th Cir. 2002) (holding "that there is no constitutionally protected property interest in a public policy-making position, aside from what are commonly called its economic benefits").

The court finds that *Harris* supports Mr. Folmar's position that Ms. Byrne has no constitutionally protected property interest in actually performing her job and that any

14

property interest she may have in her job is limited to the position's economic benefits. At the same time, the court is not persuaded that Ms. Byrne has raised a distinction between the facts of this case and those in *Harris* which makes a substantive difference. Ms. Byrne says that the holding in *Harris* cannot be applied to her situation because the employment contract in *Harris* was for a set four-year term which made it easy to calculate the "full economic value of [the plaintiff's] employment." (Doc. # 31 at 4.) She contends that, because her term of employment "is not fixed," any attempt to assign a monetary value to it "would be speculative." (*Id.*) She, however, has not cited any authority in support of her position (*id.*), and, in reaching its holding, the *Harris* court did not focus on, or for that matter mention, the fact that the employment contract was for a specified duration. *Harris*, 105 F.3d at 596-97.

In his reply brief, Mr. Folmar says that Ms. Byrne's focus on the absence of a contract actually cuts against Ms. Byrne's claim that she has a protected property interest in her position. (Doc. # 32 at 3.) Mr. Folmar's argument finds support in case law. In *Holloway v. Reeves*, for example, it was the existence of an employment contract which "strongly support[ed]" the conclusion that the public employee's "entitlement to the job [was] sufficiently certain so as to amount to a constitutionally protected property interest" and that, therefore, the public employee had an "expectation of continued employment." 277 F.3d 1035, 1038 (8th Cir. 2002).

Having considered the parties' competing arguments, the court finds that *Harris* is relevant. Pursuant to *Harris*, the court finds that, at best, Ms. Byrne has a protected property

interest in the economic benefits of her employment and that any property interest she has in her continued employment is constitutionally safeguarded by the payment of her full salary and benefits.  In other words, Ms. Byrne cannot go forward on her claim that she has been denied procedural due process if she has not been deprived of any economic benefits attendant with her job.  Going one step further, applying *Harris* at the motion to dismiss stage, the court finds that, without an allegation that her salary or benefits have been reduced, Ms. Byrne's claim is deficient under Rule 8(a), as well as under the "heightened pleading requirement" applicable when qualified immunity is at issue.  *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998); *see also Epps v. Watson*, 492 F.3d 1240, 1242 (11th Cir. 2007) (reiterating that the Eleventh Circuit "imposes a heightened pleading requirement in section 1983 claims against individuals").

In her Second Amended Complaint, Ms. Byrne alleges that, while she still is employed by the Board and has the same "title," she "has suffered loss of position, title, prestige and status[,] loss of authority and responsibility[,] and loss of opportunities for job advancement."  (2d Am. Compl. ¶¶ 24, 37.)  There, however, are no allegations that Ms. Byrne suffered a loss of any economic or financial benefits of her position when Mr. Folmar took away her primary job duties, and Ms. Byrne does not challenge Mr. Folmar's assertion that she continues to receive her full pay and benefits.  The court observes also that it gave Ms. Bryne an opportunity to cure her pleading deficiencies (Doc. # 19), but she failed to do so as to her Fourteenth Amendment claim alleging that she was divested of her primary job

16

duties without procedural due process. As pleaded, the facts are insufficient to "raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.

In sum, because there are no allegations in the Second Amended Complaint suggesting that Ms. Bryne has been deprived of a constitutionally-protected property interest, the court finds that Ms. Byrne fails to state a Fourteenth Amendment procedural due process claim against Mr. Folmar in his individual capacity. Because Ms. Byrne is entitled to qualified immunity on the first *Saucier* inquiry, the court need not address the second *Saucier* inquiry. *See* 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Mr. Folmar, therefore, is entitled to qualified immunity in his individual capacity, and his motion to dismiss as to this claim is due to be granted.

### 3. Official-Capacity Claims

As stated above, Ms. Byrne's Fourteenth Amendment procedural due process claim predicated on the deprivation of a property interest is twofold. The court's finding, above, that Ms. Byrne fails to state a § 1983 individual-capacity claim under Rule 8(a) on her Fourteenth Amendment claim alleging that she was divested of her primary job duties without procedural due process also means that Ms. Byrne's official-capacity claim predicated on the same allegations likewise fails. *See Hoard v. Sizemore*, 198 F.3d 205, 221-22 (6th Cir. 1999) (plaintiffs' failure to establish a constitutional violation under the qualified immunity analysis with respect to individual-capacity claims necessarily disposed

17

of plaintiffs' claims against government officials in their official capacities); Fed. R. Civ. P. 8(a). Accordingly, the court finds that Mr. Folmar, in his official capacity, also is not liable on Ms. Byrne's due process claim addressed in the preceding section.

As to Ms. Byrne's remaining § 1983 official-capacity claim against him,[1] Mr. Folmar urges dismissal of any claims for relief, other than injunctive relief, based on the Eleventh Amendment and for the additional reason that, in his official capacity, he is not a "person" within the meaning of § 1983. (Doc. # 26 at 14, citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)); (*id.* at 15.) Ms. Byrne responds that her claims against Mr. Folmar in his official-capacity are limited to "proper" claims for injunctive relief (Doc. # 31 at 5).

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court of the United States held that Eleventh Amendment immunity does not extend to suits against state officers seeking prospective equitable relief to end continuing violations of federal law. *See Fla. Assoc. of Rehab. Facilities v. State of Florida Dept. of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000). Likewise, government officials sued for prospective equitable relief, including reinstatement, are persons under § 1983. *Melo v. Hafer*, 912 F.2d 628, 635-37 (3d Cir. 1990); *Cross v. Ala. Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995).

---

[1] Again, that claim is a Fourteenth Amendment claim by Ms. Byrne that she was denied procedural due process when she attempted to file a complaint of gender discrimination against Mr. Folmar with the Board's personnel office, but was told that she could not file a complaint against him because he was not a merit system employee.

Here, as set out in the Second Amended Complaint's "Prayer for Relief," Ms. Byrne seeks reinstatement from Mr. Folmar in his official capacity. (2d Am. Compl. at 19.) The "Prayer for Relief" does not contain a claim for monetary damages against Mr. Folmar in his official capacity. Based on *Florida Association of Rehabilitation Facilities* and *Cross*, the court finds that the injunctive relief sought by Ms. Byrne is appropriate and that Mr. Folmar's arguments for dismissal are moot.

### B. Title VII: Counts Five, Six, Seven and Eight

#### *1. Exhaustion of Administrative Remedies*

As to Title VII's exhaustion requirement, the Board says that the "Second Amended Complaint is deficient in that it is silent on the subject of either having filed a charge of discrimination or having received a right-to-sue letter from the [Equal Employment Opportunity Commission]." (Doc. # 26 at 15.) The Board argues that "[t]he vague assertion that 'all conditions precedent' have been fulfilled for the action, is not sufficient to establish that the court should entertain [Ms.] Byrne's Title VII claims." (*Id.*, citing 2d Am. Compl. ¶ 38.) Ms. Byrne, however, maintains that her general averment is sufficient based upon the authority of *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992 (11th Cir. 1982). For the reasons to follow, the court agrees with Ms. Byrne.

In *Jackson*, the Eleventh Circuit held that "a plaintiff must generally allege in his [or her] complaint that 'all conditions precedent to the institution of the lawsuit have been fulfilled.'" *Id.* at 1010 (citing Fed. R. Civ. P. 9(c)). *Jackson* imposes no further pleading burden on a plaintiff.

Here, Ms. Byrne's allegations mirror the language in *Jackson*, as Ms. Byrne avers that she "has fulfilled all conditions precedent to the filing of this action." (2d Am. Compl. ¶ 38.) Based upon *Jackson*, the court finds that Ms. Byrne meets her burden of alleging general compliance with Title VII's EEOC filing requirements. Accordingly, the court is not persuaded by the Board's argument for dismissal that Ms. Byrne did not sufficiently allege exhaustion of administrative remedies in the Second Amended Complaint.

### 2. Prima Facie Elements

The Board's remaining arguments focus on Ms. Byrne's alleged failure to state a claim in Counts Five, Six, Seven and Eight for gender discrimination based upon theories of disparate treatment and hostile work environment, and for unlawful retaliation. (Doc. # 26 at 15-29.) Specifically, the Board contends that Ms. Byrne has failed to plead the Title VII prima facie elements under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (Doc. # 26 at 15-29.)

The Supreme Court, however, has held that the prima facie case under *McDonnell-Douglas* is an evidentiary standard, not a pleading requirement. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). A complaint predicated on a Title VII violation based upon intentional discrimination or retaliation, thus, "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (citing *Swierkiewicz*, 534 U.S. at 511). It need only provide "'enough factual matter (taken as true) to suggest'" intentional discrimination or retaliation. *Id. (citing Twombly*, 127 S. Ct. at 1965). The sufficiency of the allegations, thus,

must be evaluated against the *Swierkiewicz* standard.  It is not necessary that Ms. Byrne plead a prima facie case of discrimination or retaliation in order to survive a motion to dismiss.

Applying the relevant standard, the court finds that Counts Five, Six, Seven and Eight satisfy the requirements set out in *Swierkiewicz*.  In Count Five, Ms. Byrne alleges that, notwithstanding that she was qualified to perform all the duties of her position, she was subjected to adverse employment actions because of her gender.  (2d Am. Compl. ¶¶ 94, 96-97.)  For example, she avers that Mr. Folmar stripped her of most of her supervisory responsibilities, leaving her only with clerical duties, (*id.* ¶¶ 25, 94, 97), and the inferences support Ms. Byrne's position (Doc. # 31 at 6) that other male division chiefs were similarly situated to her, but were accorded preferential treatment.  (*Id.* ¶¶ 36, 95.)  These allegations, when considered in combination with the lengthy "Facts" section of the Second Amended Complaint (Doc. # 21 ¶¶ 7-38), outline the events leading to the adverse actions, provide relevant dates, name the individuals involved in the adverse actions, and reference the gender and title of the proposed comparators.  The court finds that these allegations give the Board adequate notice of Ms. Byrne's claim of intentional gender discrimination and the grounds upon which the claim rests.  *Swierkiewicz*, 534 U.S. at 514 (holding that plaintiff provided sufficient details in his Title VII national origin discrimination claim when he alleged that he was terminated based on his national origin and "[h]is complaint detailed the events leading to his termination, provided relevant dates, and included the . . . nationalities of at least some of the relevant persons involved with his termination").

In Count Six, Ms. Byrne alleges that, because she is female, she was subjected to at least nine adverse acts which she enumerates, and that these acts, considered in their totality, constitute a hostile work environment under Title VII. (2d Am. Compl. ¶¶ 100-01, 103.) She alleges that other male employees, which as stated above include male division chiefs, were not subjected to the same adverse treatment. (*Id.* ¶ 101.) Again, against the backdrop of the "Facts" section of the Second Amended Complaint, the court finds that these allegations are sufficient to provide the Board with "fair notice" that Ms. Byrne brings a Title VII gender-based hostile work environment claim, *Swierkiewicz*, 534 U.S. at 514, and that the claim rests on grounds "'that similarly situated persons not of [her] sex were treated differently and better.'" *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1302 (11th Cir. 2007) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1254 n.3 (11th Cir. 1999)); *see also Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F.3d 1139, 1143 (11th Cir. 2008) ("in hostile work environment cases, '[t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed'") (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Moreover, the court finds that Count Six puts forth "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.

Counts Seven and Eight are retaliation claims, predicated on theories of tangible employment action and hostile work environment. (2d Am. Compl. ¶¶ 112-18.) The court has considered the Board's arguments urging dismissal of these claims. The arguments are similar to the ones the Board raises as to the sufficiency of Counts Five and Six. (*See, e.g.,*

Doc. # 26 at 25, arguing for dismissal of Counts Seven and Eight and incorporating by reference the Board's arguments for dismissal of Counts Four and Five.)  The Board argues, for instance, that the acts of which Ms. Byrne complains "fall short of alleging an actionable retaliatory hostile environment," and that other acts are not serious enough to demonstrate an "adverse employment action" under the Title VII retaliation prima facie model.  (*Id.* at 25-27.)

Having carefully considered the Board's arguments, the court finds that the issues, which focus on Ms. Byrne's failure to plead adequately the prima facie elements, are more appropriately explored under the evidentiary review available to the Board pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Swierkiewicz,* 534 U.S. at 512 (Rule 8(a)'s "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.").  Under *Swierkiewicz*, the court finds that these Title VII retaliation claims may go forward, regardless of the probability of success on the merits.  *See Swierkiewicz*, 534 U.S. at 515 ("Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.").  In sum, the court concludes that Counts Five, Six, Seven and Eight survive the Board's motion to dismiss.

## V.  CONCLUSION

Accordingly, it is ORDERED that Defendants Alabama Alcoholic Beverage Control Board and Emory Folmar's Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted (Doc. # 25) is DENIED in part and GRANTED in part as follows:

(A)    It is DENIED as to Ms. Byrne's 42 U.S.C. § 1983 Fourteenth Amendment claim against Mr. Folmar in his individual and official capacities, alleging that Ms. Byrne was denied procedural due process when she attempted to file a complaint of gender discrimination against Mr. Folmar with the Board's personnel office, but was told that she could not file a complaint against him because he was not a merit system employee.

(B)    It is DENIED as to Ms. Byrne's Title VII claims against the Board.

(C)    It is GRANTED as to Ms. Byrne's 42 U.S.C. § 1983 Fourteenth Amendment claims against Mr. Folmar in his individual and official capacities, alleging (1) a deprivation of a protected liberty interest in violation of the Due Process Clause and (2) intentional gender and age discrimination, in violation of the Equal Protection Clause.

(D)    It is GRANTED as to Ms. Byrne's § 1983 Fourteenth Amendment procedural due process claim against Mr. Folmar in his individual and official capacities, alleging that she had a protected property interest in her job duties as a division chief.

DONE this 3rd day of September, 2008.

/s/  W. Keith Watkins
UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1. **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)   **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)   **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)   **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)   **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)   **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

*Rev.: 4/04*

2.  **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

    (a)  **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)  **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)  **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)  **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)  **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).